RICHARD R. RISS, SR., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3794-62, 3795-62, 3879-62, 3178-66.    Filed December 30, 1971.

*Guy A. Magruder, Jr.,* and *Richard M. Erickson,* for the petitioners. *Edward G. Lavery,* for the respondent.

### SUPPLEMENTAL OPINION

IRWIN, *Judge:* In our prior opinion in this case, entered May 24, 1971 (56 T.C. 388), we held (issue one) that the gain realized on the sale by Transport Manufacturing & Equipment Co. of Delaware (T.M.E.) of 814 truck trailers should be allocated between T.M.E. and its sister corporation Riss & Co., Inc. (Riss). In addition, we did not decide (issue three) whether T.M.E. could deduct as a long-term capital loss the loss realized from the sale of the "63d Street property" in 1957 because it appeared to us that the parties had stipulated that the property was sold at a gain.

---

[3] See also *Huelsman* v. *Commissioner,* 416 F. 2d 477 (C.A. 6, 1969), remanding T.C. Memo. 1968-95.

[1] Richard R. Riss, Sr., and Helen Gossard Riss, docket No. 3795-62; Transport Manufacturing & Equipment Co. of Delaware, docket No. 3879-62; and Richard R. Riss, Sr., docket No. 3178-66.

Respondent filed a motion to reconsider and revise our opinion on the following grounds: (1) (issue one) that we had made a computational mistake in allocating the gain between T.M.E. and Riss under the theory announced in the opinion; and (2) (issue three) that the 63d Street property had in fact been sold at a loss and that we should determine whether the loss was deductible. T.M.E. as petitioner filed a brief in response to respondent's motion which we have elected to treat as a separate motion for reconsideration because it raises matters not within the scope of respondent's motion. For purposes of this supplemental opinion, petitioner shall refer solely to T.M.E. Petitioner contends in regard to issue one that allocation of the gain between T.M.E. and Riss under any theory is inconsistent with the findings of fact and conclusions of law reached in our prior opinion; however, petitioner concedes that respondent's proposed recomputation of the allocation is correct if we adhere to the theory of our prior opinion. Petitioner agrees with respondent that the 63d Street property was sold at a loss and that the deductibility of the loss is in issue.

In the course of the hearing on respondent's motion and on brief, respondent asked us to reconsider our position with respect to the deductibility of losses that T.M.E. realized on the sale of automobiles used solely for the personal enjoyment of its shareholders and their families. (56 T.C. at 413-415.) The legal issue involved with the sale of the automobiles is precisely the same as is involved with the sale of the 63d Street property.

Accordingly, we shall review the propriety of our allocation of the gain on the sale of the truck trailers between T.M.E. and Riss and also decide whether the losses sustained by T.M.E. on the sales of the automobiles and the 63d Street property are deductible.

In view of the length and completeness of our prior opinion, we shall merely summarize the facts necessary for disposition of the issues under consideration.

### Issue 1. 1957 Sale of Trailers to Fruehauf

Petitioner T.M.E. and its sister corporation, Riss, were controlled by the same family interests. T.M.E. was organized in 1938 in accordance with an industry-wide practice to eliminate the problems caused by Interstate Commerce rules limiting the amount of indebtedness which could be incurred by a common carrier like Riss. T.M.E. purchased equipment on credit and leased it to Riss for amounts which equaled T.M.E.'s depreciation deductions plus a modest markup which covered T.M.E.'s out-of-pocket expenses. T.M.E. was not expected to make any substantial profit under this arrangement from the rental

of equipment. In fact, T.M.E. was no more than the conduit of Riss in procuring equipment.

In 1954, T.M.E. purchased various kinds of truck trailers from Fruehauf to lease to Riss for use in its business. As was their practice, T.M.E. and Riss entered into a 6-year lease agreement. Because T.M.E. computed its depreciation on the double-declining balance method, the rental charged Riss during the first years of the lease was considerably greater than was charged during the latter years.

The trailers purchased in 1954 did not turn out to be satisfactory for Riss' purposes. In 1957, T.M.E. was able to convince Fruehauf to repurchase 814 of the 3-year-old trailers at a price which was in excess of their fair market value and agreed to purchase from Fruehauf 850 new trailers. Because selling the 3-year-old trailers would deprive Riss of the low rentals which would obtain in the last 3 years of its lease and also subject it to high payments in the first years of a new lease, T.M.E. and Riss entered into an agreement which granted Riss the right to receive any profit that was realized on the sale of the trailers to Fruehauf.

The 814 trailers were sold to Fruehauf at a gain of $2,215,243.53 which T.M.E. did not report as gain on its return for 1957. Instead, T.M.E. treated the amount as a credit to an account receivable from Riss. Respondent determined that T.M.E. realized capital gain equal to the difference between the selling price of the 814 trailers and their basis. Respondent's notice of deficiency did not attempt to explain the adjustment but stated the following:

(c) It is determined that you realized long-term capital gains in the amount of $2,278,468.30 as shown on Exhibit B–1 attached, in lieu of $51,242.52 reported on your income tax return. Therefore, taxable income is increased in the amount of $2,227,225.78.

Petitioner's petition in this Court set forth its agreement with Riss and the underlying circumstances as indicating that the gain on the sale of the trailers belonged to Riss rather than to petitioner. Respondent's answer was a general denial of those allegations; it did not allege that the transactions between T.M.E. and Riss were less than arm's length or that T.M.E. made a payment to Riss for less than adequate consideration. The parties stipulated that an agreement did in fact exist in accordance with the terms set forth by petitioner.

At trial evidence presented by T.M.E. tended to show that it was acting as Riss' conduit in procuring equipment and that the gain realized on the sale of the truck trailers belonged to Riss rather than petitioner. Respondent's opening statement recognized that the issue before the Court was whether the gain on the sale of the trail-

ers belong to T.M.E. or Riss. During the course of the trial respondent offered little which contradicted petitioner's evidence.

On brief, respondent offered for the first time two theories under which T.M.E. would be required to recognize at least part of the gain: (1) That the agreement between T.M.E. and Riss was not entered into for valid business reasons and did not represent an arm's-length transaction; and (2) that the payment by T.M.E. in the amount of the gain of $2,215,243.53 was not made for adequate consideration.

. We believed that respondent's first theory raised the applicability of section 482 without specifically mentioning the provision. We declined to test petitioner's agreement with Riss against section 482 because respondent was derelict in failing to raise the "arm's-length" issue in his pleadings. 56 T.C. at 401. In addition we examined the arrangement between petitioner and Riss and found it to be "based upon . * * * sound business judgment and precipitated by factors beyond the control of either contracting party." 56 T.C. at 402.

Despite our holding that respondent first raised his allocation theory too late and our finding that the T.M.E.-Riss agreement was bona fide, we nevertheless examined the economic consequences of the agreement. We found that T.M.E. by giving all of its gain from the sale of the trailers to Riss was compensating Riss to an extent which exceeded any economic loss that Riss might suffer because of the sale. In substance, we tested the agreement between the parties against the "adequacy of consideration" theory first argued by respondent on brief without specifically alluding to this theory. Applying this theory we found that Riss was entitled to receive from T.M.E. only the difference between the rent that it actually paid prior to the sale of the trailers and the rent that it would have paid if T.M.E. had computed depreciation on the straight-line rather than the double-declining balance method. Hence, T.M.E. would be permitted to compensate Riss for its loss of the low rentals expected during the last 3 years of the lease, but T.M.E. would be required to recognize any gain on the sale in excess of adequate compensation to Riss. We held that this excess was $217,413.03. The parties are agreed that under the correct computation the excess is $840,389.64.[2]

Petitioner contends that if the "arm's-length" theory of respondent is to be rejected because it was raised too late, the "adequacy of consideration" theory is to be rejected similarly because it was not presented at trial. Upon reconsideration, we agree.

---

[2] The difference between the excess as originally determined and as recomputed is due to our omission of the markup factor in our determination of straight-line rent.

The trial clearly proceeded upon the theory that T.M.E. was no more than a conduit for Riss and that the gain from the sale of the trailers was realized by Riss rather than by petitioner. Stated briefly, the issued framed by the pleadings and presented at trial was whether T.M.E. realized the gain at all and was not whether T.M.E., after having realized the gain, could deflect part of it to Riss as compensation for loss of an advantageous lease.

Upon the record in this case, it does appear that T.M.E. "paid" Riss more than Riss lost by virtue of the termination of the 1954 lease; however, we cannot hold that petitioner failed to meet its burden with respect to an issue that was not raised until after trial. Petitioner's evidence concerning the issue actually presented, though not perfect, was not rebutted by respondent. We now agree with petitioner that we should not permit respondent to circumvent the failure of his own proof by deciding the case on a theory to which petitioner had no opportunity to address itself at trial.

Further inspection of the record indicates that petitioner has been substantially prejudiced by the untimely interjection of the "arm's-length" and "adequacy of consideration" theories. For example, there is evidence in the record indicating that Riss suffered damage because the trailers purchased in 1954 from Fruehauf were inadequately constructed. The president of T.M.E. estimated the damage to Riss to be about $800,000; however, T.M.E. did not substantiate the amount of the loss. On the record we were unable to hold that part of the premium price that Fruehauf paid to repurchase the 1954 trailers was to account for the losses that Riss had on account of the inadequacy of the trailers. 56 T.C. at 395. Evidence substantiating the amount of the losses caused by defects in the trailers was only tangential and not necessary to proving that T.M.E. did not realize the gain on the sale; such evidence would, however, prove that petitioner's "payment" to Riss was to compensate it for losses in addition to the loss of the advantageous part of the lease.

At the hearing on the motion for reconsideration respondent stated that this Court had inherent authority to allocate the gain realized between related parties according to economic realities citing *Helvering* v. *Horst*, 311 U.S. 112 (1940), and the panoply of the assignment-of-income cases. The rule of *Helvering* v. *Horst* is that income is to be taxed to the person who earned it, and petitioner's evidence indicated that Riss rather than T.M.E. was entitled to the gain on the sale of the trailers. Accordingly, respondent should have come forward at trial to show that petitioner earned the income under *Helvering* v. *Horst* by attacking the bona fides of the T.M.E.-Riss agreement.

Our inherent authority is to decide cases upon issues properly before us. This case may well have presented opportunities for applying section 482 or some theory within the assignment-of-income area; however, these opportunities were lost when respondent failed to inform petitioner either in the statutory notice, in his answer, or at trial of his intended theory for sustaining the deficiency. Accordingly, we modify our prior opinion and hold that petitioner realized none of the gain from the sale of the truck trailers.

### Issue 3. 63d Street Property

In February 1952, petitioner bought the 63d Street property at a cost of $38,021.50. The property was not used in petitioner's business but was occupied exclusively as a residence by Robert Riss and his family.

On June 1, 1957, the property was sold to an unrelated purchaser for $34,500 with sales expenses amounting to $1,762.95. On its 1957 corporate tax return petitioner reported that the residence had been sold at a gain computed in the following manner:

| | | |
|---|---|---|
| Sales price | | $34, 500. 00 |
| Cost | $38, 021. 50 | |
| Depreciation | (11, 560. 80) | |
| Book value | 26, 460. 70 | |
| Sales expense | 1, 762. 95 | |
| | | 28, 223. 65 |
| Gain | | 6, 276. 35 |

Because the property was not used in the corporation's business, the deductions for depreciation were not allowable. Consequently, the residence was in fact sold at a loss of $5,284.45 computed as follows:

| | | |
|---|---|---|
| Sales price | | $34, 500. 00 |
| Cost | $38, 021. 50 | |
| Selling expense | 1, 762. 95 | |
| | | 39, 784. 45 |
| Loss (stipulated by parties) | | (5, 284. 45) |

Since the filing of our opinion herein, the Court has had an opportunity to reconsider its position with respect to losses realized by corporations on the sale of property that is not devoted to use in a trade or business. In *International Trading Co.*, 57 T.C. 455 (1971), we held that a corporation could not deduct under section 165(a) the

loss sustained on the sale of a recreational facility that was used exclusively by the shareholders of the corporation. We declined to follow our decision in this case that such losses were deductible. See 56 T.C. at 413–416.

The decision in *International Trading Co.* clearly precludes our permitting petitioner to deduct under section 165(a) the loss realized on the sale of the 63d Street property. Similarly, we are compelled to modify our prior holding with respect to the automobiles. Therefore, we hold that T.M.E. may not deduct either the losses sustained on the sale of the automobiles or the loss sustained on the sale of the 63d Street property.

*Decisions will be entered under Rule 50.*