WILLIE JAMES BROWN and LINDA R. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 347-78.
United States Tax Court
T.C. Memo 1979-443; 1979 Tax Ct. Memo LEXIS 83; 39 T.C.M. (CCH) 442; T.C.M. (RIA) 79443; November 6, 1979, Filed *83 At the trial herein the question presented was whether petitioner was sole owner of an apartment building. On brief, respondent conceded that petitioner was sole owner, but argued that petitioner should be denied certain deductions because he did not operate the building as an activity engaged in for profit. Sec. 183, I.R.C., 1954. Held: sec. 183 is a "new issue". Were the Court to hear this "new issue" substantial detriment would result to petitioner. Hence, we refuse to hear respondent's sec. 183 claim. Held further: other deductions determined. James E. Caldwell, for the petitioners. Mitchell S. Fuerst, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By letter dated October 13, 1977 respondent determined a deficiency in petitioners' income taxes paid for their taxable year ended December 31, 1975 in the amount of $937.81. The primary issue for our decision herein is whether *85 respondent timely raised section 183 as authority to support his claimed deficiency. [1]
FINDINGS OF FACT Some of the facts were stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Willie James and Linda R. Brown, husband and wife, timely filed a joint cash basis Federal income tax return for their taxable year ended December 31, 1975 with the Director, Internal Revenue Service Center, Kansas City, Missouri. A timely petition herein was filed on January 10, 1978. At that time petitioners resided in Chicago, Illinois. As petitioner Linda R. Brown is a party hereto solely by virtue of having filed jointly with her husband, "petitioner" as used herein shall refer only to Mr. Brown. On May 29, 1975 petitioner *86 purchased a three-story apartment building on Chicago's South Side for $40,800. [2] Each floor of the building contained one apartment or "flat". Petitioner bought this building because (1) he was about to be married and wanted a home for his future wife and himself, and (2) he wished to bring his mother and sister, who were then residing on Chicago's West Side, to better housing on the South Side. It was petitioner's hope that all the Browns, i.e. he, his wife, sister and mother and two brothers, could reside together in this building. Petitioner wanted this building to be a "family" building. In preparing to purchase the building, on November 26, 1974, petitioner filed a loan application, in his name alone, with Citizens Mortgage Corporation. For reasons not made clear by the record this application was later amended to add thereto the names of petitioner's mother and sister. The mortgage closing statement listed not only petitioner, but also Collie Brown (petitioner's mother) and Dell E. Brown (petitioner's *87 sister) as mortgagors. The deed to the building was to "Willie James Brown, Dell E. Brown, spinster and Collie Brown." When petitioner moved into the building the second floor flat was occupied by tenants, a family by the name of Pettis. The Pettises resided in petitioner's building throughout the taxable year before us and aid the petitioner $200 per month rent. Petitioner and his new wife occupied the first floor flat, while petitioner's mother and sister (and his two brothers) moved into and occupied the third floor apartment. After the Pettises moved out, sometime in 1976, petitioner's sister moved into the second floor flat. Throughout 1975 petitioner's mother paid $200 per month "rent".When petitioner's sister moved to the second floor she also paid petitioner $200 per month. Petitioner paid all the mortgage, tax, interest, and utilities payments with respect to the building out of his general checking account. Petitioner deposited all of his "rental" receipts including thosefrom the Pettises, his mother, and later his sister, into this general account. In February of 1972 petitioner purchased a used car for $4,656.88. Petitioner depreciated this car on a 20 percent *88 declining balance method using a three year useful life. Petitioner deducted $596.73 as depreciation on this car for his taxable year 1971, $869.28 for 1972, and $554.25 for 1973, and $437.06 for 1974. Petitioner deducted $561.15 as a depreciation deduction on this same car for his 1975 taxable year. It was stipulated that during 1975 petitioner used this car 21 percent for business. Petitioner used the car 22 percent, 31 percent, 20 percent, and 16 percent for business during the years 1971 to 1974, respectively. Petitioner claimed a charitable contribution deduction of $955 on his return for the taxable year before us. This total was made up of $110 in contributions for which petitioner had written evidence, $550 in contributions to "church", $140 to "charities", and $155 in "street contributions". Petitioner testified only with respect to the "church" contributions, saying that his wife went to church "just about every Sunday" and that he went to church on an average of two or three times a month. Of the $955 total claimed, respondent allowed $344. On his 1975 calendar year return petitioner claimed an interest paid deduction of $2,251.17. Respondent allowed $628.32 *89 of this amount, i.e. all that interest paid which was not interest paid in respect of petitioner's mortgage on the building. Respondent has conceded that the remaining amount, i.e. $1,622.85 was actually paid in respect of petitioner's mortgage. Petitioner deducted $1,636.27 for taxes paid on his 1975 calendar year return. The parties have stipulated that $1,418.14 of this amount, including $316.20 allocable to the building, was properly deducted. OPINION Petitioner bought a three apartment, three-story building in mid-1975. Throughout the rest of that calendar year petitioner's mother and sister resided in the third floor apartment and an unrelated family (the Pettises) resided in the second floor flat. Petitioner resided in the ground floor apartment. Petitioner received $200 per month rent from the Pettises. His mother paid him $200 per month. This case was tried on respondent's theory that petitioner was not in the trade or business, in 1975, of renting to his mother and tha t only the Pettises' apartment was actually "rented." Respondent's theory was based on his view that petitioner, his mother and sister were all co-owners of the building. As one owner of an asset *90 cannot be in the trade or business of enting to another co-owner what both persons own equally, petitioner's income did not include amounts attributable to the flats occupied by he or his co-owners and he was not entitled to any related deductions. Respondent's argument was founded on the wording of the deed which showed all three persons as co-owners of the building. Rather than income to petitioner, respondent viewed those payments he received from his mother as being mere contributions by one owner to another with respect to the operation and preservation of their jointly owned property. Respondent would therefore allow petitioner only 1/3 of that portion of the building's income and deductions attributable to the flat occupied by the Pettises. Petitioner on the other hand argued what he called the "substance" of the transaction. This substance, claimed petitioner, was that, regardless of the face of the deed, he was at all times intended to be the sole owner of the building. For the first time on brief respondent conceded that petitioner was the sole owner of the building. In place of his ownership theory, however, respondent claimed that section 183 should apply to *91 limit the allowability of petitioner's deductions relating to the building. [3] Petitioner argued in his reply brief that he would be "extremely disadvantaged" were respondent allowed to raise this issue. Thus the first issue we must decide is whether respondent's claim, that petitioner's operation of his building is subject to the provisions of section 183, was timely raised. We think not. It is clear on the face of respondent's statutory notice of deficiency that respondent's original theory dealt with the question of whether petitioner was the sole owner of the apartment building involved as respondent disallowed a portion of each of petitioner's claimed deductions on the basis that he was only one of three persons who owned the building. There is no indication anywhere in the notice that section 183, or the question of whether petitioner operated the building as an activity engaged in for profit, was in issue. Petitioner's petition to this Court addressed solely the ownership issue. There is no *92 hint therein that petitioner considered section 183 to be an issue. Respondent's answer was a general denial of petitioner's allegations. The pleadings are, in relevant part, without amendment. At the trial the opening statements of both parties gave no indication that section 183 was in issue. A stipulation of facts, together with attached exhibits, was submitted on joint motion of the parties, and witnesses gave their evidence--all obviously on the theory that owneship of a building, not operation of a business, was at issue. No hint of respondent's reliance on section 183 is to be found anywhere in the record prior to the time he submitted his main brief herein, at which time respondent abandoned his ownership theory and asserted section 183. It is well settled that respondent's determination may be affirmed for reasons other than those assigned in his notice of deficiency. It is equally "well settled that new issues may not be raised for the first time on brief." Robertson v. Commissioner,55 T.C. 862, 865 (1971), Shomaker v. Commissioner,38 T.C. 192, 201 (1962). Therefore, if respondent's section 183 issue is a new issue raised on *93 brief, we need not hear it. [4]
We think it clear that section 183 is a "new issue" and that it was raised for the first time on brief. Yet we need not rest our decision herein on often amorphous new "reason" new "issue" distinction: In this Court's opinion, it is appropriate to determine whether surprise and disadvantage are present prior to making the often esoteric finding that a particular theory advanced by the respondent has characteristics more like new "reasons" than new "issues" or "matters." This is so because once surprise and substantial detriment are found, the theory, whether a new reason or new issue, need not be heard by this Court. Cf. Commissioner v. Chelsea Products,197 F.2d 620, 624 (C.A. 3, 1952), affirming 16 T.C. 840 (1951); Richard R. Riss, Sr.,56 T.C. 388, 400 (1971), supplementary opinion 57 T.C. 469 (1971, on appeal (C.A. 8, June 26, 1972). [Fn. ref. omitted.] [Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973).] Thus, if we find *94 that petitioner has been surprised and substantially disadvantaged in the presentation of his case because of the manner in which the statutory notice and pleadings were drawn, and the trial conducted, when compared to the issues raised in respondent's original brief, then we need not hear respondent's section 183 issue. Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975), Estate of Horvath v. Commissioner,supra at 551. On brief respondent "notes" his belief that there could be no substantial disadvantage to petitioner in the Court considering his new theory because "the applicability of section 183 was tried with the mutual consent of the parties." Conversely petitioner claims surprise and indicates his belief that substantial prejudice would result to him should we consider respondent's new theory. When issues not previously raised are tried with the expressed or implied consent of the parties, the pleadings may be amended to conform them to evidence. Rule 41(b), Tax Court Rules of Practice and Procedure. We can find no evidence, however, of respondent's claimed "mutual consent". [5] Indeed it is clear that petitioner could not have *95 consented to the section 183 issue because he was not even aware section 183 was an issue until he received respondent's original brief. See Markwardt v. Commissioner,supra at 998. On the other hand we find much evidence to indicate that petitioner would be substantially surprised and disadvantaged if we were to allow respondent to continue on this new course. Because he was not given notice of respondents impending shift, petitioner was denied the notice and the chance to prepare an adequate case on the section 183 issue which is his due. Had he been given notice petitioner could have put on evidence with respect to many questions not fairly raised by respondent's original ownership theory. For example, petitioner could have proven that the fair rental value of his flats were no more than that which he actually charged. Further, many other questions might have been answered: Did petitioner at any time advertise his apartment for rent? At what price? *96 Why did the Pettises move out of their apartment in 1976? Was it because the rent was too high? Did petitioner inform them of an impending rent boost? If the fair rental value of petitioner's apartments was as low as the amounts he actually charged, why did petitioner pay over $40,000 for the building? If petitioner did advertise, what responses did he get? What are the going rental rates in petitioner's neighborhood? Has petitioner at any other time had other real estate investments or business experience? These and other items of possible evidence come to mind as points petitioner might have addressed had he been given otice of respondent's new tact. We conclude that to require petitioner to argue the section 183 issue under these circumstances would severely prejudice his case and violate the fundamental fairness necessary in carrying out the judicial function. Accordingly, we shall not hear the issue. Ross Glove Co. v. Commissioner,60 T.C. 569, 595 (1973). See also Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975). As section 183 was not argued in the alternative, and as respondent's concession that petitioner was the sole owner *97 of the building was absolute, that concession must stand. Thus we conclude that petitioner's receipts, as disclosed on his return, from his other during the taxable year before us were rental income. We conclude further that petitioner is entitled to the full amount of allowable depreciation and rental expense deductions on 2/3 of the building. [6] Of course, that part of petitioner's rental expense deduction attributable to his own flat, is personal and not allowable. Section 262, section 1.262-1(b)(3), Income Tax Regs. Further, petitioner cannot depreciate that part of the cost of his building attributable to his own flat. Section 167(a). The total stipulated amount of petitioner's interest paid ($2,251.17) and taxes paid ($1,418.14) deductions are, of course, allowable. Next we turn to petitioner's claimed employee business expense deductions. Here, the only item of respondent's determinations still in issue is respondent's disallowance of petitioner's claimed automobile *98 depreciation deduction. [7] Respondent's position is that (1) as petitioner's car was "used" when he purchased it in 1972, he was not entitled to an accelerated method of depreciation and (2) in any event, as petitioner had chosen to depreciate his car on a 3-year useful life and had already depreciated the car in the four taxable years prior to 1975 (including, we might add, a taxable year prior to the year he bought the car), he is entitled no depreciation deduction in 1975. Clearly, as the car was a "used car", its "original use" did not commence with the taxpayer. Petitioner was, therefore, not entitled to depreciate it under an accelerated method.Section 167(c)(2), section 1.167(c)-1(a)(2), Income Tax Regs. Further, the record clearly shows that petitioner took depreciation deductions on this car for each of the four taxable years prior to the one in issue--even though in each of those taxable years he depreciated the car on a 3-year useful life. Where a change in an asset's useful life is justified, and the asset is being depreciated on a declining balance *99 method, subsequent computations are made as though the revised useful life had been originally estimated. Section 1.167(b)-2(c), Income Tax Regs. Clearly, such a revision of an asset's useful life must be made before the asset's business basis has been fully depreciated. When an asset's useful life for depreciation purposes has already run without revision it perforce follows that no business asset remains, in the contemplation of the tax law, to depreciate. [8] As petitioner had already fully depreciated that part of his automobile's basis attributable to his business prior to 1975, no deduction therefor is allowable in 1975. The final issue with which we must deal is the charitable contributions deduction. The burden is on petitioner to substantiate by good and sufficient evidence his claimed deduction. Welch v. Helvering,290 U.S. 111 (1933). *100 The only evidence presented with respect of these deductions related to certain church contributions allegedly made by petitioner and his wife. Petitioner has failed to establish that he is entitled to an allowance greater than that already provided him by respondent. Decision will be entered under Rule 155.
Footnotes
1. At the trial herein respondent moved to be allowed to amend his answer herein to claim an increased deficiency. While he had previously allowed 8/9th of petitioners claimed mortgage interest deduction, respondent moved to be allowed to file an amendment to his answer allowing only 1/3 thereof. The Court, finding no prejudice possible in this instance, agreed to accept the amendment.↩
2. At the trial the parties stipulated that $4,200 of this amount was attributable to the land. Petitioner's entire basis in the building is, therefore, $36,600.↩
3. While respondent's successful application of his sec. 183↩ theory would increase the deficiency amount herein, respondent has disclaimed any increased deficiency amount.
4. Resondent himself concedes that "section 183(a)↩ constitutes what may be considered a new matter as per T.C. Rule 142(a)."
5. In his reply brief respondent retreated a little from this mutual consent claim, saying "that the applicability of [I.R.C. sec. 183↩] * * * was tacitly tried by the parties."
6. We note respondent's concession on brief that, while petitioner had claimed a rental expense deduction of only $1,805.42, petitioner had established that his expenses actually paid totaled $3,835.71.↩
7. The parties have stipulated, and we find, that 21 percent of petitioner's other claimed expenses are deductible.↩
8. Petitioner had already fully depreciated his car prior to the taxable year before us. Prior to the taxable year before us, petitioner had deducted $2,457.32. His total allowable depreciation deduction during those 4 years--even assuming a 3-year useful life and utilizing the straight line--totaled only $1,233.21.↩