GEORGE CHEROFF and ROSEMARY CHEROFF, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cheroff v. Commissioner
Docket No. 6555-76.
United States Tax Court
T.C. Memo 1980-125; 1980 Tax Ct. Memo LEXIS 453; 40 T.C.M. (CCH) 183; T.C.M. (RIA) 80125; 65 Oil & Gas Rep. 609; April 21, 1980, Filed *453 Ps had an interest in drilling partnerships which, on Dec. 29, 1972, entered into contracts with the parent corporation of their general partners for the drilling of oil and gas wells. Both the partnerships and the parent corporation used the accrual method of accounting. In 1972, Ps deducted their proportionate share of the intangible drilling costs accrued by the partnerships as a result of the contracts and their proportionate share of alleged management fees incurred by such partnerships. The Commissioner disallowed the deduction for intangible drilling costs in 1972 on the ground that the drilling partnerships did not sustain the losses in 1972 on which the deduction was based. He also disallowed the deduction for management fees on the ground that such amounts represented capital expenditures. Held, Ps are entitled to the deduction for the intangible drilling costs in 1972 under sec. 1.461-1(a)(2), Income Tax Regs., since the Commissioner conceded that the drilling contracts were made in that year and that such contracts were sufficient to establish the fact of the liability and the amount thereof. Held, further, Ps failed to prove that any amounts are deductible *454 as management fees in 1972. George Cheroff, pro se. Milton B. Blouke, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $3,144.00 in the petitioners' Federal income tax for 1972. The issues for decision are: (1) Whether the members of a partnership are entitled to deduct intangible drilling costs in 1972, the year in which the partnership entered into a contract for the drilling of oil and gas wells; and (2) whether in that year, the partnership incurred any deductible management fees. FINDING OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, George Cheroff and Rosemary Cheroff, husband and wife, maintained their legal residence in Los Gatos, Calif., at the time they filed their petition in *456 this case. They filed their joint Federal income tax return for 1972, and an amended return for such year, with the Internal Revenue Service Center, Fresno, Calif. Mr. Cheroff will sometimes be referred to as the petitioner. During the year in issue, Texas International Drilling Funds, Inc. (TIDF), was a Delaware corporation engaged in the sponsoring and managing of oil and gas drilling for public investors. TIDF was a wholly owned subsidiary of Texas International Petroleum Corporation (TIPCO), which was a wholly owned subsidiary of Texas International Company. TIDF was the general partner of the Texas International Drilling Fund, Series A (the fund), a limited partnership which participated in a program of semi-proven and exploratory drilling for oil and gas. Those who invested in the fund purchased units of participation as limited partners. The petitioner invested in the fund and was a limited partner in it during the year in issue. The fund was a limited partner of the Texas International Drilling partnership 72-2, the Texas International Drilling partnership 72-3, and the Texas International Drilling partnership 72-4 (the drilling partnerships). TIDF was the general *457 partner and partnership operator of each of the drilling partnerships. Money invested in the fund was paid to the drilling partnerships by TIDF; the drilling partnerships then used the money for expenses incurred by them. The money the petitioner invested in the fund was transferred to the drilling partnerships in this manner.The fund had no power over the operations, management, or control of the drilling partnerships, and the petitioner, as a limited partner of the fund, had no power over its affairs.
On December 29, 1972, each of the drilling partnerships entered into a separate multiple well or blanket drilling contract with TIPCO. Except for the price and number of wells to be drilled, all three contracts were identical and provided in part the TIPCO would "drill and complete or cause to the drilled" the number of wells specified in the contract, that each drilling partnership would pay TIPCO the total price of its contract on or before December 29, 1972, for the purpose of giving TIPCO "adequate working capital for drilling" the wells and to allow it "to take advantage of available cash discounts," that the drilling of all wells would be commenced within 1 year from the date *458 of the contract, and that if the cost of drilling the number of wells specified was less than the total price paid, then TIPCO would "be required to drill such of the designated wells * * * as will cause the Final Price of the wells drilled to equal the Total Price set forth above." Each of the contracts also provided that if the cost of all the wells drilled was less than the tota price paid, TIPCO's "obligation shall be ended and no cash refund shall be made" to the drilling partnership. Sometime after December 29, 1972, each of the contracts was modified to increase the number of wells to be drilled by TIPCO. The drilling partnerships and TIPCO used the accrual method of accounting and filed their tax returns on the calendar year basis. Such partnerships made a proper election in accordance with the provisions of section 263(c) of the Internal Revenue Code of 1954[1] and section 1.612-4(a), Income Tax Regs., to charge to expense all intagible drilling and development costs incurred in connection with the preparation of wells for the production of oil and gas. Such partnerships also accrued amounts for management fees in 1972. *459 The total price for each of the drilling contracts and the amount accrued by the partnerships for management fees in 1972 were as follows: Partnership
Contract Price
Management Fee
72-2
$ 597,300
$175,500
72-3
1,138,700
265,875
72-4
1,498,400
254,000
The actual drilling was subcontracted by TIPCO to independent drilling contractors, who were paid in accordance with their contracts upon completion of performance. The drilling of all wells commenced in late 1972 or in 1973. All wells were either completed or plugged and abandoned in 1973. The petitioner's fractional share of the losses of the drilling partnerships was.0028777 for partnership 72-2,.0028209 for partnership 72-3, and.0019685 for partnership 72-4. On their joint Federal income tax return for 1972, the petitioners deducted $16,039.00 as a loss attributable to their interest in the fund. In his notice of deficiency, the Commissioner disallowed such deduction on the ground that the drilling partnerships did not sustain the losses in 1972 on which the deduction was based. The Commissioner now maintains that the petitioners are entitled to deduct $5,928.84 in 1973 as an intangible drilling *460 expense. OPINION The first issue we must consider is whether the petitioners are entitled to a deduction in 1972 for their share of intangible drilling expenses which the drilling partnerships claimed for that year as a result of their contracts with TIPCO entered into on December 29, 1972. Since the petitioners were limited partners in the fund, which was a limited partner of the drilling partnerships, the timing of the petitioners' deductions is determined by the timing of the drilling partnerships' deductions. Secs. 701, 702, 704, 706; sec. 1.461-1, Income Tax Regs.; see Resnik v. Commissioner, 66 T.C. 74, 80 (1976), affd. per curiam 555 F. 2d 634 (7th Cir. 1977). A deduction for intagible drilling and development costs of oil and gas wells was not specifically granted in the internal revenue laws prior to 1954, but "Since 1917--or virtually since the inception of the federal income tax laws--the operator of an oil and gas property has been afforded an election either to deduct or to capitalize the intangible costs associated with drilling and developing the property." L. Baum, "Intangible Drilling and Development Costs: Some Recurring Problems, *461 " 21st Inst. on Oil and Gas Law and Taxation 337 (1970). Congressional approval of this deduction was set forth in section 263(c), which directs the Commissioner to prescribe regulations corresponding to previous regulations which had granted the option. See Mertens, Law of Federal Income Taxation, Code Commentary, Sec. 263(c): 1 (1975). Section 1.612-4, Income Tax Regs., which implements section 263(c), provides an option to charge to capital or to expense intangible drilling and development costs incurred in the development of oil and gas properties. The option is available only to "an operator," who is defined as one who holds a working or operating interest in any tract or parcel of land either as a full owner or under a lease or any other form of contract granting working or operating rights. Section 1.612-4(d) provides in part that: The option granted * * * to charge intangible drilling and development costs to expense may be exercised by claiming intangible drilling and development costs as a deduction on the taxpayer's return for the first taxable year in which the taxpayer pays or incurs such costs * * * Moreover, section 1.461-1(a)(2), Income Tax Regs., provides *462 in part that a taxpayer using the accrual method of accounting may deduct an expense in "the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." The parties agree that the drilling partnerships made a proper election in accordance with section 263(c) and section 1.612-4, Income Tax Regs., to charge to expense all intangible drilling and development costs incurred in connection with the preparation of wells for the production of oil and gas. The petitioners contend that under the accrual method of accounting used by the drilling partnerships, the expenses incurred by such partnerships under their contracts with TIPCO on December 29, 1972, are properly deductible in that year since "all the events * * * which determine the fact of the liability and the amount thereof" could be "determined with reasonable accuracy" in 1972. Sec. 1.461-1(a)(2), Income Tax Regs. In his brief, the Commissioner, for the first time, raised the argument that for tax purposes, the liabilities arising out of the drilling contracts were not accruable in 1972 because the contracts lacked economic substance *463 and had no business purpose. He asserts that there was no business reason for making the contracts in that year, and he points to the fact that TIDF, the general partner of the drilling partnerships, was a subsidiary of TIPCO and that TIPCO could have secured the funds from TIDF at any time. It is well settled that issues raised for the first time on brief will not be considered when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973); Riss v. Commissioner, 56 T.C. 388, 401 (1971), supp. opinion 57 T.C. 469 (1971), affd. on this issue 478 F. 2d 1160 (8th Cir. 1973); Theatre Concessions, Inc. v. Commissioner, 29 T.C. 754, 760-761 (1958). If the petitioners had been aware that the contracts of the drilling partnerships were being challenged on the grounds of lack of business purpose and economic substance, they might have presented evidence to rebut the Commissioner's determination on those grounds. The petitioners would thus be prejudiced if we were to consider and decide this issue *464 on the question of business purpose since they have had no opportunity to consider and address the question. Accordingly, we will not consider this argument because it was not timely raised by the Commissioner. Moreover, the Commissioner has not challenged the deduction for intangible drilling costs on the ground that the making of the drilling contracts in 1972 distorted the income of the drilling partnerships or that by making such contracts in 1972, the drilling partnerships acquired assets having a life extending beyond the year. Sec. 446(b); sec. 1.461-1(a)(2), Income Tax Regs.; see also Rev. Rul. 80-71, 1980-11 I.R.B. 7. Since those questions have not been properly raised by the Commissioner in this case, we will not deal with them. We are then left with the Commissioner's contention as set forth in the notice of deficiency that such deduction is not allowable since the drilling partnerships did not sustain the losses in 1972. Yet, the Commissioner has admitted that the drilling contracts were made in 1972, and in his brief, he did not question that such contracts were sufficient to establish the fact of liability and the amount thereof in 1972. Under section *465 1.461-1(a)(2), Income Tax Regs., a taxpayer on the accrual method of accounting may deduct an expense in "the taxable year in which all events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Under these circumstances, the Commissioner has in effect conceded his case. Accordingly, we must hold that the petitioners are entitled to a deduction in 1972 for their share of the intangible drilling expenses since the liability and amount were determined in that year. We must next consider what amount, if any, may be deducted by the drilling partnerships in 1972 as management fees. The petitioners have the burden of proof to establish that they are entitled to such deduction, and to do so, they must demonstrate that the drilling partnerships incurred in 1972 management fees which were ordinary and necessary expenses within the meaning of section 162(a). Welch v. Helvering, 290 U.S. 111 (1933). However, they introduced no evidence to establish that the amounts which the drilling partnerships accrued as management fees were in fact ordinary and necessary expenses, and that the amounts were not in *466 fact expenditures which should be capitalized. Therefore, we sustain the Commissioner's determination that no amount is deductible in 1972 as management fees. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩