STRADLINGS BUILDING MATERIALS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11468–78.     Filed January 14, 1981.

---

*Dale E. Andersen,* for the petitioner.
*Dennis C. DeBerry,* for the respondent.

OPINION

HALL, *Judge*: Respondent determined a deficiency in petitioner's 1973 Federal income tax of $30,720. The sole issue for decision is whether petitioner is entitled to an $80,003 intangible drilling expense deduction in 1973.

This case was submitted fully stipulated.

Petitioner is a corporation organized under the laws of the State of Arizona, with its principal place of business in Mesa, Ariz. Petitioner is engaged primarily in the business of cabinet building.

Petitioner maintains its books and records and files its Federal income tax returns using the accrual method of accounting and a taxable year ending June 30.

On June 27, 1973, petitioner paid $80,000 as a capital contribution to the Contro Development Co. (Contro), a limited partnership. Contro maintains its books and records on a June 30 fiscal year.

On or before June 28, 1973, Contro paid $160,000 (including petitioner's $80,000 contribution) to Thor International Energy Corp. (Thor) pursuant to a binding contract to drill six oil and gas wells on designated well sites located in Perry County, Ohio.[1] Contro held working or operating interests in the six well sites located in Perry County.

Subsequent to June 28, 1973, Thor drilled only one well for Contro. Thor's failure to fulfill its contractual obligation to drill the other five wells formed the basis of a suit filed by Contro on

---

[1] In a letter to Contro dated Aug. 14, 1973, Thor provided the following breakdown of the intended application of the $160,000:

| | | |
|---|---|---:|
| 1. | Yarger-Johnson No. 1 | $32,000 |
| 2. | Melick No. 4 | 16,000 |
| 3. | Swingle No. 1 | 32,000 |
| 4. | Wigham No. 3 | 20,400 |
| 5. | Wigham No. 4 | 20,400 |
| 6. | Wigham No. 5 | 20,400 |
| 7. | Commission to Master Services, Inc | 18,800 |
| | | 160,000 |

July 5, 1974, in Maricopa County, Ariz. The lawsuit resulted in a judgment in Contro's favor.

On its June 30, 1973, Federal tax return, petitioner deducted $80,003[2] as its allocable share of the intangible drilling costs incurred by Contro. Respondent allowed a $32,006 intangible drilling and expense deduction to Contro for the one well drilled by Thor. One-half of this amount, $16,003, represents petitioner's allocable share of the allowed deduction. Respondent disallowed the remaining $64,000 deducted by petitioner.

Section 263(c)[3] authorizes a taxpayer to elect to deduct intangible drilling expenses in accordance with regulations prescribed by the Commissioner. Section 1.612–4, Income Tax Regs., which implements section 263(c), provides an option to capitalize or to deduct currently intangible drilling expenses incurred in the development of gas and oil properties. The election is available only to an "operator," who is defined as one who holds a working or operating interest in any tract or parcel of land either as a full owner or under a lease or any other form of contract granting working or operating interests. Section 1.612–4(d), Income Tax Regs., provides in part that:

The option granted * * * to charge intangible drilling and development costs to expense may be exercised by claiming intangible drilling and development costs as a deduction on the taxpayer's return for the first taxable year in which the taxpayer pays or incurs such costs * * *

If a taxpayer elects to expense intangible drilling costs, then the appropriate year of deduction is determined pursuant to section 461 and the regulations thereunder. See Rev. Rul. 80–71, 1980–1 C.B. 106.[4] Where that taxpayer is a partner in a partnership, the timing of his deduction is determined by the timing of the partnership's deduction. Secs. 701, 702, 704, 706; sec. 1.702–1(a)(8)(i), Income Tax Regs. See also *Resnik v. Commissioner*, 66 T.C. 74, 79 (1976), affd. per curiam 555 F.2d 634 (7th Cir. 1977).

The issue presented in this case is whether petitioner is entitled to a deduction, on its 1973 fiscal year tax return, for its share of intangible drilling expenses which Contro claimed for

---

[2]The record does not indicate the source of the $3 difference between petitioner's deduction and his contribution to the Contro partnership.

[3]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

[4]See also *Cheroff v. Commissioner*, T.C. Memo. 1980–125.

that year as a result of its contract with Thor. The resolution of this issue, as framed by the parties, depends on whether Thor's failure to drill for Contro five of the six contracted wells disqualifies $128,000 of the partnership's $160,000 prepayment from being deductible currently as an intangible drilling expense in 1973.[5]

---

[5]At the threshold, we had to determine the nature of the issue presented by the parties. The parties submitted this case to us on a fully stipulated basis pursuant to Rule 122, Tax Court Rules of Practice and Procedure. A review of the submitted record and the parties' opening briefs indicates that the parties' successfully narrowed their disagreements.

From the outset, respondent conceded the deductibility of the intangible drilling costs associated with the one well actually drilled by Thor on behalf of the Contro partnership. In his statutory notice, respondent stated three reasons for disallowing the remaining $64,000 deducted by petitioner:

"The [$64,000] amount is not deductible since the partnership failed to show that it had a working or operating interest in a mineral property; that oil or gas wells were drilled, or that intangible drilling costs were either incurred or paid."

In respondent's answer, he admitted that during fiscal year 1973 the total amount of petitioner's contribution to the Contro partnership ($80,000) was paid to Thor "under a binding contract under which the latter agreed to drill certain specific wells." This statement was essentially repeated in the stipulation of facts executed by the parties. Also in that stipulation was the following statement:

"Contro had no working or operating interest in a mineral, oil or gas property, other than its working or operating interest in the six well sites [contracted to be drilled by Thor]."

In respondent's opening brief, he concisely states his litigating position for the disallowed deduction:

"Petitioner invested in a limited partnership, Contro, which in turn paid Thor to drill six oil and gas wells. Only one was actually drilled. Thor failed and refused to drill the other five wells. Respondent allowed the intangible drilling cost attributable to this one well drilled.

"Consequently, no amount of the remaining funds paid for the five wells not drilled constitute intangible drilling costs or expenses for oil and gas wells. Since there were no wells actually drilled there can be no intangible drilling costs or expenses made or incurred. There is no deduction therefor [sic] within the provisions of Reg. § 1.612–4(a), promulgated pursuant to I.R.C. § 263(c), and the several recently decided cases thereunder."

Petitioner's opening brief mirrors respondent's insofar as the issue presented for resolution:

"The sole issue to be decided is whether respondent properly disallowed $128,000 of the $160,006 of intangible drilling expenses claimed by the partnership, where the partnership during the tax year had paid over $160,000 to a third party drilling contractor under a binding agreement for the drilling of six wells on specified well sites in which Contro had a working or operating interest where the third party drilling contractor in a subsequent tax year drilled only one of the six wells it had agreed to drill and failed and refused to drill the other five wells."

This apparent agreement on the issue presented abruptly disappeared in respondent's reply brief. In addition to his opening argument, respondent claimed that the $64,000 deduction in dispute was not deductible because petitioner (1) failed to introduce evidence as to Contro's method of accounting, (2) failed to demonstrate the amount was properly accruable under the "all events" test (see sec. 1.461–1(a)(2), Income Tax Regs.), (3) failed to show that the $160,000 pre-payment under the Thor contract was a contractual requirement which had a business purpose (see Rev. Rul. 71–252, 1971–1 C.B. 146; Rev. Rul. 80–71, 1980–11 I.R.B. 7), and (4) failed to show that "the nature or purpose for the payment was intangible drilling costs under a fixed

Neither the stipulation of facts nor the exhibits attached to that stipulation discloses the method of accounting used by Contro. Petitioner contends, however, that regardless of the method of accounting used, the entire $160,000 expended by Contro pursuant to its contract with Thor was properly deductible in 1973. Petitioner relies on *Pauley v. United States,* an unreported case (S.D. Cal. 1963, 11 AFTR 2d 955, 63–1 USTC par. 9280), and sec. 1.461–1(a)(2), Income Tax Regs. On the other hand, respondent argues that the absence of any drilling with respect to five of the six contracted wells disqualifies any deduction relating to those wells.

Respondent bases his argument on six recent cases.[6] Respondent contends that the option to deduct currently intangible drilling costs under section 1.612–4(a), Income Tax Regs., is "available only respecting expenditures actually made for drilling and developing or completing a well." *Cottingham v. Commissioner,* 63 T.C. 695, 706 (1975). He argues that this characterization is consistent with the notion that a taxpayer's ability to deduct currently intangible drilling costs is dependent upon his assumption of "the risk of the unknown result of the drilling." *Haass v. Commissioner,* 55 T.C. 43, 50 (1970).

We read the cases cited by respondent as establishing the

---

contractual obligation at the time of payment, * * * rather than for a working interest in the wells or deposit on even a loan—conclusions equally logical and applicable."

As reflected in their opening briefs, their pleadings, and their stipulation of facts, the parties were able to pare down the issues to the point where a trial was not necessary. Respondent's reply brief, however, attempts to inject other issues in addition to the one previously focused on by the parties. In our view, these other issues were effectively abandoned during the early stages of this proceeding and, accordingly, their revival at this late date will not be considered due to the potential unfairness to petitioner. See *Estate of Horvath v. Commissioner,* 59 T.C. 551, 555–556 (1973): *Riss v. Commissioner,* 56 T.C. 388, 401 (1971), supplemental opinion 57 T.C. 469, 477 (1971), affd. on this issue 478 F.2d 1160 (8th Cir. 1973). See also *Cheroff v. Commissioner,* a Memorandum Opinion of this Court, 40 T.C.M. 183, 49 P-H Memo T.C. par. 80,125 (1980). If these other issues were properly raised, petitioner might have presented evidence to rebut the Commissioner's determination on those grounds. This might have necessitated a trial rather than a submission under Rule 122, Tax Court Rules of Practice and Procedure. Petitioner would therefore be prejudiced if we were to consider and decide these other issues.

[6]These cases are: *Cottingham v. Commissioner,* 63 T.C. 695 (1975); *Haass v. Commissioner,* 55 T.C. 43 (1970); *Puscas v. Commissioner,* a Memorandum Opinion of this Court, 37 T.C.M. 358, 47 P-H Memo T.C. par. 78,073 (1978); *Sanderson v. Commissioner,* a Memorandum Opinion of this Court, 36 T.C.M. 174, 46 P-H Memo T.C. par. 77,040 (1977); *Gardner v. Commissioner,* a Memorandum Opinion of this Court, 35 T.C.M. 1546, 45 P-H Memo T.C. par. 76,337 (1976); *Heberer v. Commissioner,* a Memorandum Opinion of this Court, 33 T.C.M. 626, 43 P-H Memo T.C. par. 74,139 (1974).

following criteria to qualify for the option under section 1.612–4(a), Income Tax Regs.: (1) The taxpayer must hold an operating or working interest in the property being developed; (2) the costs in question must relate to the development of the property in which the taxpayer has a working or operating interest; (3) the nature of the expenditure must fall within the definitional guidelines provided by section 1.612–4(a), Income Tax Regs.; and (4) the payment or incurrence of the costs must occur sufficiently early in the development stages so that the taxpayer is exposed to the unknown risks of development. Respondent now invites us to graft another requirement onto this list, namely, that, even where there is a contractual obligation to perform, the timing of intangible drilling-cost deductions is dependent upon when the drilling or development work is actually performed regardless of the taxpayer's method of accounting. As applied to the present case, respondent wants us to sustain his disallowance of petitioner's 1973 deduction because the contracted wells were not drilled in a subsequent year.

In our view, neither the cited cases nor the regulations require the performance of drilling services prior to, or concurrent with, the deductibility of the cost of those services.[7] Rather, whether prepaid expenses are deductible is generally a question of tax accounting. See sec. 461; sec. 1.461–1(a), Income Tax Regs.; Rev. Rul. 71–252, 1971–1 C.B. 146; Rev. Rul. 71–579, 1971–2 C.B. 225; Rev. Rul. 80–71, 1980–1 C.B. 106.

The determination and payment of income taxes is based on annual accounting periods. This determination is based on the facts as they exist with respect to the particular year involved. Sec. 1.461–1(a)(3), Income Tax Regs.; *Security Flour Mills Co. v. Commissioner*, 321 U.S. 281 (1944). To the extent that subsequent events reveal that a prior accounting was incorrect, an adjustment will be required. Sec. 1.461–1(a)(3), Income Tax Regs. We do not see how respondent could have expected petitioner to foresee that Thor would breach his contractual commitment subsequent to June 30, 1973, the end of petitioner's

---

[7]Respondent himself does not accept the position he asserts. In Rev. Rul. 71–252, 1971–1 C.B. 146, respondent ruled that, under certain circumstances, a cash basis taxpayer may deduct, currently, prepaid drilling expenses in one year despite the performance of the contracted services in the following year. See also *Pauley v. United States*, an unreported case (S.D. Cal. 1963, 11 AFTR 2d 955, 63–1 USTC par. 9280); Rev. Rul. 71–579, 1971–2 C.B. 225; Rev. Rul. 80–71, 1980–1 C.B. 106.

1973 fiscal year. This, however, is what respondent evidently expected. By conceding the deductibility of the cost of the one well actually drilled respondent implies that if the other five contracted wells had been drilled, i.e., no breach occurred, then he would have allowed petitioner's entire deduction.[8] In viewing the situation from a June 30, 1973, perspective, we see no logical basis on which to distinguish the deductibility of the prepaid costs associated with the one well subsequently drilled from the prepaid costs of the five wells subsequently not drilled. In essence, therefore, respondent has conceded the 1973 deductibility of the $160,000 prepayment under Contro's method of accounting.[9]

To reflect the foregoing,

*Decision will be entered for the petitioner.*

---

[8]Respondent has not raised, nor do we consider, whether the $18,800 allocable to commissions is deductible as an intangible drilling cost.

[9]We offer no opinion as to the adjustments required in years subsequent to 1973 as a result of Thor's breach of contract. Even if that were presently within our jurisdiction, which it is not, the facts necessary to a determination are not before us.