THEATRE CONCESSIONS, INC., A FLORIDA CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55331. Filed January 31, 1958.

*William T. Rogers, Esq.*, for the petitioner.
*Raymond Whiteaker, Esq.*, for the respondent.

757

OPINION.

KERN, *Judge:* The first question to be considered is whether respondent properly determined under section 15 (c) of the Internal Revenue Code of 1939 [1] that petitioner was "not entitled to the bene-

---

[1] SEC. 15. SURTAX ON CORPORATIONS.

(c) DISALLOWANCE OF SURTAX EXEMPTION AND MINIMUM EXCESS PROFITS CREDIT.—If any corporation transfers, on or after January 1, 1951, all or part of its property (other than money) to another corporation which was created for the purpose of acquiring such property or which was not actively engaged in business at the time of such acquisition, and if after such transfer the transferor corporation or its stockholders, or both, are in control of such transferee corporation during any part of the taxable year of such transferee corporation, then such transferee corporation shall not for such taxable year (except as may be otherwise determined under section 129 (b)) be allowed either the $25,000 exemption

fit of the $25,000.00 exemption from surtax provided in section 15 (b), or the $25,000.00 minimum excess profits credit provided in the last sentence of section 431 * * *." Petitioner contends that respondent's determination as above stated was improper and erroneous because (1) the major purpose of any transfer here involved was not to secure the surtax exemption, and (2) there was no "transfer" within the meaning of section 15 (c).

We have concluded and found as a fact from the entire record before us that a major purpose of the formation of petitioner, the execution of the lease agreement, and the transfers of property to petitioner pursuant thereto was to effect tax savings. Certainly we cannot find on the present record that petitioner has established by a clear preponderance of the evidence that the securing of the $25,000 surtax exemption was not a major purpose of the transaction here in question.

Petitioner's contention that there was here no "transfer" within the meaning of section 15 (c) is set forth in full, and without the citation of any authority, in its brief as follows:

There was no transfer of property, other than cash, to petitioner. All of its stock was issued for $2,000 cash paid by parent corporation. The respondent will, no doubt, argue that the concession space was "transferred", but we submit that the leasing of this space was not a "transfer" of property, as that term is used in Section 15 (c) of the 1939 Code. The consideration for the space was the rent to be paid under the lease which was entered into more than a month after petitioner was organized. If Congress had intended that sales and leases of property were to be included in the term "transfer", it would have been easy enough for it to have said so. "Transfer", we submit, means an exchange of property for stock and not a sale or lease of property.

This contention is without merit. The statute uses the words "transfers * * * all or part of its property" without limitations of any kind. It seems obvious to us that the congressional intent was to include any transfer of any property. It requires no citation of authority to establish the proposition that a leasehold interest in real and personal property constitutes "property." Here Tallahassee Enterprises, Inc., effected by the lease agreement a transfer of a leasehold interest in certain theaters and equipment to petitioner, which was

from surtax provided in subsection (b) or the $25,000 minimum excess profits credit provided in the last sentence of section 431, unless such transferee corporation shall establish by the clear preponderance of the evidence that the securing of such exemption or credit was not a major purpose of such transfer. For the purposes of this subsection, control means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote or at least 80 per centum of the total value of shares of all classes of stock of the corporation. In determining the ownership of stock for the purpose of this subsection, the ownership of stock shall be determined in accordance with the provisions of section 503, except that constructive ownership under section 503 (a) (2) shall be determined only with respect to the individual's spouse and minor children. The provisions of section 129 (b), and the authority of the Secretary under such section, shall, to the extent not inconsistent with the provisions of this subsection, be applicable to this subsection. This subsection shall not apply to any taxable year with respect to which the tax imposed by subchapter D of this chapter is not in effect.

"another corporation * * * created for the purpose of acquiring such property * * * ." The statute does not limit "property" to "a fee simple title to property." Neither does it limit the word "transfer" to a transfer "solely in exchange for stock or securities" (cf. sec. 112 (b) (5)), or to a transfer without "adequate and full consideration" (cf. sec. 811 (c)). The fact that the transfer of the leasehold interest called for the payment of rental is irrelevant, and the adequacy of the rentals paid is not a problem which we need to decide.

We conclude that respondent properly denied to petitioner, pursuant to section 15 (c), the benefit of the $25,000 exemption from surtax provided in section 15 (b). It is our understanding that petitioner has not taken, and is not asking, the $25,000 minimum excess profits credit provided in the last sentence of section 431. If it has taken such credit, its disallowance would also be justified pursuant to section 15 (c).

In view of this conclusion it is unnecessary for us to consider whether respondent's action with regard to the $25,000 exemption from surtax is justified under section 129.

We turn now to a consideration of respondent's determination that petitioner is not entitled to compute its excess profits tax as a new corporation under section 430 (e) (1) (A).[2]

Respondent makes two contentions with regard to this issue.

First, he argues that by reason of paragraph (4) of the lease agreement, wherein petitioner agreed to pay Tallahassee Enterprises, Inc., for merchandise and supplies on hand a sum equal to the latter's costs therefor, the petitioner's basis as to the property thus acquired "is determined by reference to the basis of such [property] to the transferor" within the meaning of section 445 (g) (2) (A), and therefore by virtue of section 430 (e) (2) (B) (i) [3] the method of computing excess profits taxes provided by section 430 (e) (1) (A) is not available to petitioner.

---

[2] SEC. 430. IMPOSITION OF TAX.

(e) NEW CORPORATIONS.—

(1) ALTERNATIVE AMOUNT.—In the case of a taxpayer which commenced business after July 1, 1945, and whose fifth taxable year ends after June 30, 1950, the amount referred to in subsection (a) (3) shall be—

(A) If the taxable year is the first or second taxable year of the taxpayer, an amount equal to 5 per centum of the excess profits net income for the taxable year, except that if the excess profits net income exceeds $300,000, the amount shall be the sum of $15,000 plus the amount determined under subparagraph (E) of this paragraph.

[3] SEC. 430. IMPOSITION OF TAX.

(e) NEW CORPORATIONS.—

* * * * * * * *

(2) FIRST FIVE TAXABLE YEARS.—For the purpose of this subsection—

* * * * * * * *

(B) The taxpayer shall be considered to have been in existence and to have had taxable years for any period during which it or any corporation described in any clause of this subparagraph was in existence, and the taxpayer shall be considered to have commenced business on the earliest date on which it or any such corporation commenced business:

(i) Any corporation which during or prior to the taxable year was a party with the taxpayer to a transaction described in section 445 (g) (2) (A), (B), or (C), determined as if the date "July 1, 1945" were substituted for the date "December 1, 1950" in section 445 (g) (2) (C)

Second, respondent argues that such a computation is not available to petitioner because of the provisions of section 430 (e) (2) (B) (ii) [4] "inasmuch as a group of not more than four persons who controlled the petitioner also controlled Tallahassee Enterprises, Inc. during the 12-month period preceding their acquisition of control of the petitioner and that Tallahassee Enterprises, Inc. had been in business for more than five years and was engaged in a trade or business substantially similar to that of the petitioner."

With regard to this second argument of respondent on this issue, there is no reference to it in the pleadings and it was not mentioned in the opening statement of respondent's counsel at the trial herein. The only evidence as to "control" of Tallahassee Enterprises, Inc., is the undisputed testimony that there were five stockholders of that corporation.

If respondent is to prevail on this argument, it must be for the reason that there is a failure of proof.

This theory was advanced by respondent for the first time in his brief filed long after the trial of this case and at a time when petitioner was helpless to remedy its position.

We think that rudimentary principles of equity and justice forbid our consideration of a theory advanced by the respondent in such a way and at such a time. Petitioner was not apprised of the necessity of evidence with which to meet this contention at the time of the hearing. The fundamental purpose of pleadings is to inform the parties, and the Court, of the issues involved, and certainly the taxpayer is entitled to know, at least by the date of the hearing, the ground upon which the Commissioner has acted and the contention which he is required to meet in order to establish the error of the determination. The respondent cannot be allowed to profit by a contention, made long after the testimony has been heard, based upon a failure of proof of a fact which was not, in any practical sense, put in issue by the pleadings, and which was not germane to any theory

---

[4] Section 430 (e) (2) (B) (ii) reads as follows:

Any corporation if a group of not more than four persons who control the taxpayer at any time during the taxable year also controlled such corporation at any time during the period beginning twelve months preceding their acquisition of control of the taxpayer and ending with the close of the taxable year; but only if at any time during such period (and while such persons controlled such corporation) such corporation was engaged in a trade or business substantially similar to the trade or business of the taxpayer during the taxable year. For the purpose of this clause, the term "control" means the ownership of more than 50 per centum of the total combined voting power of all classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock. A person shall not be considered a member of the group referred to in this clause unless during the period referred to in this clause he owns stock in such corporation at a time when the members of the group control such corporation and he owns stock in the taxpayer at a time when the members of the group control the taxpayer. For the purpose of this clause, the ownership of stock shall be determined in accordance with the provisions of section 503, except that constructive ownership under section 503 (a) (2) shall be determined only with respect to the individual's spouse and minor children.

theretofore advanced by respondent or even mentioned by respondent's counsel at the trial herein.

With regard to respondent's first argument on this issue, we are of the opinion that the transaction here involved is not one described in section 445 (g) (2) (A). Petitioner's basis as to the merchandise and supplies purchased from Tallahassee Enterprises, Inc., was *its* cost. It is true that its cost was to be "a sum equal to [the vendor's] costs for such merchandise and supplies," but the fact that the price paid for merchandise is to be calculated with reference to the vendor's cost does not warrant a conclusion that its basis "is determined by reference to the basis of such properties to the transferor." We consider that the transactions referred to in section 445 (g) (2) (A) are among those particularized as exceptions to section 113 (a), and do not include a transaction in which the basis of the property is the cost to the acquiring corporation pursuant to section 113 (a), even though that cost is calculated by reference to the cost to the vendor.

On this issue we decide in favor of petitioner.

*Decision will be entered under Rule 50.*