ESTATE OF MARY E. GILLESPIE, DECEASED, BARTLETT F. COLE, TESTAMENTARY TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12424–77.     Filed December 10, 1980.

Bartlett F. Cole (testamentary trustee), for the petitioner.
*Jan R. Pierce,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $33,874 in the petitioner's estate tax. The parties have settled certain issues, and the issues remaining for decision are: (1) Whether section 2055(e)(2) of the Internal Revenue Code of 1954[1] is constitutional and disallows a deduction for a contingent remainder interest bequeathed to a church; and (2) whether the estate improperly omitted certain dividends on the estate tax return.

FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

---

[1] All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.

The decedent, Mary E. Gillespie, died on December 4, 1974, and was a resident of Portland, Ore., at the time of her death. The executor of her estate, Bartlett F. Cole, filed a Federal estate tax return for the decedent's estate with the Internal Revenue Service. Mr. Cole maintained a business address in Portland, Ore., at the time he filed the petition in this case.

On March 1, 1968, Mary E. Gillespie executed a last will and testament which provided that all jointly owned property pass upon her death to her husband, Miln D. Gillespie, if he survived her. The decedent also left the remainder of her estate in trust for the use and benefit of her son, Hugh William Gillespie (Hugh). The will named the Bank of California in Portland and Bartlett F. Cole as cotrustees of such trust. The will provided that the trustees shall, at their discretion, make payments for her son's support, education, health, and welfare, and that upon her son's 21st birthday, the trustees shall pay to him one-fifth of the principal balance and continue to pay him one-fifth of the principal balance on each of his birthdays thereafter. The trustees were instructed to distribute any remaining balance on his 26th birthday.

The decedent's will also provided that if her son were to die before the trust estate was distributed to him and if he had a child or children, then the undistributed balance shall be held in trust for the use and benefit of such grandchild or grandchildren and distributed to them in equal amounts when the youngest reaches the age of 21. The will further stated that if there were no surviving child or grandchild at the time of distribution, the undistributed trust estate shall go to the decedent's husband, and if he did not survive, then to the First Unitarian Church of Portland, Ore. (the church).

Miln Gillespie died on April 4, 1968, and, therefore, did not survive the decedent.

On July 9, 1973, the decedent executed a codicil to her will. The codicil provided that in the event the trustees were of the opinion that Hugh was unable to hold and manage his property, then the trustees should hold the estate in trust during his lifetime or until such time as, in their sole discretion, he was capable of handling his own financial affairs. In administering the trust, Hugh's general welfare was to be the trustees' paramount consideration.

Hugh suffers from chronic schizophrenia. Since adolescence,

he has generally lived in various institutions and schools for the emotionally disturbed. It is unlikely that he will ever recover from such illness or that he will ever be self-supporting.

When Mary Gillespie died on December 4, 1974, Bartlett F. Cole was appointed personal representative to administer the estate in Oregon. After the decedent's death, the Bank of California declined to serve as trustee, and Mr. Cole became the sole trustee. The decedent's estate is now closed.

On the Federal estate tax return, $145,988 was claimed as a charitable deduction by reason of the gift of the remainder interest to the church. In his notice of deficiency, the Commissioner determined that such deduction was not allowable under section 2055 since the trust was neither a charitable remainder annuity trust nor a charitable remainder unitrust. The Commissioner also determined that dividends in the amount of $2,082 were improperly omitted from the estate tax return.

## OPINION

The first issue to be considered is whether the estate is entitled to a charitable deduction for the contingent remainder interest bequeathed to the church. The Commissioner contends that such remainder interest is subject to the provisions of section 2055(e)(2) and that since the trust established under the decedent's will is not a charitable remainder annuity trust, a charitable remainder unitrust, or a pooled income fund, the estate is not entitled to an estate tax charitable deduction. The petitioner, in effect, concedes that the trust does not meet the requirements of section 2055(e)(2). However, it points to the fact that the trust was established to provide support for Hugh, that he will be dependent upon such trust throughout his lifetime, and that throughout history, trusts have been used in similar situations. Also, the estate contends that since Hugh is not likely to have children, it is probable that at least a portion of the trust will be transferred to the church upon Hugh's death. Thus, it argues that section 2055(e)(2) "is so arbitrary, capricious, so devoid of reason, and so impossible of attainment, that * * * [it] must be declared unconstitutional and void, as a senseless restriction on testamentary giving."

Prior to the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, an estate tax deduction was allowed for transfers of property in trust with a remainder interest to charity if the

value of the charitable interest was presently ascertainable, and if the possibility that the charitable transfer will become effective was not so remote as to be negligible. Sec. 20.2055–2(a), and (b), Estate Tax Regs. Thus, if a decedent who died before January 1, 1970, transferred property to a trust to pay income to an individual for life and then to pay the principal to charity, the present value of the remainder interest qualified for an estate tax charitable deduction. However, Congress concluded that such rule resulted in certain abuses. For example, the assets of such a trust might be invested in a manner so as to maximize the income interest with the result that there would be little relationship between the interest assumptions used in calculating the present value of the charitable remainder and the present value of the amount actually received by the charity. H. Rept. 91–413 (1969), 1969–3 C.B. 200, 237. Also, a deduction was often allowed for a conditional bequest to charity even though it was not probable that the full amount of the bequest would ultimately be received by the charity. H. Rept. 91–413, *supra,* 1969–3 C.B. at 237–238. For example, a deduction was allowable for a charitable bequest even though the charity's interest was contingent upon the failure of issue or even though the trust's terms permitted invasion of the charitable share for the benefit of the income beneficiary. See, e.g., *Estate of DeFoucaucourt v. Commissioner,* 62 T.C. 485 (1974); *Estate of Jack v. Commissioner,* 6 T.C. 241 (1946).

In order to correct these perceived abuses, and to insure a closer correlation between the amount of the estate tax charitable deduction and the present value of the amount ultimately passing to charity, the Tax Reform Act of 1969 added section 2055(e)(2) to the Internal Revenue Code of 1954. Pub. L. 91–172, sec. 201(d)(1), 83 Stat. 560. Such section is effective, with certain exceptions not here relevant, with respect of decedents dying after December 31, 1969. It provides that an estate tax charitable deduction is not allowed for transfers of property to a trust which has both charitable and noncharitable interests unless, in the case of a remainder interest, the trust is in one of three qualifying forms: a charitable remainder annuity trust,[2] a

---

[2] A charitable remainder annuity trust is defined by sec. 664(d)(1) as:

a trust—

(A) from which a sum certain (which is not less than 5 percent of the initial net fair market value of all property placed in trust) is to be paid, not less often than annually, to one or more

charitable remainder unitrust,[3] or a pooled income fund.[4] Sec. 2055(e)(2)(A). It is clear from the legislative history that Congress intended to disallow a charitable deduction in situations similar to the one presented in this case. See H. Rept. 91–413, *supra*, 1969–3 C.B. at 237–238; S. Rept. 91–552 (1969), 1969–3 C.B. 423, 479–480.

The petitioner views section 2055(e)(2) as abrogating a decedent's right to provide for the needs of an income beneficiary and to pass property upon the beneficiary's death to charity. We do not view the statute as having such an effect. The

---

persons (at least one of which is not an organization described in section 170(c) and, in the case of individuals, only to an individual who is living at the time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals.

(B) from which no amount other than the payments described in subparagraph (A) may be paid to or for the use of any person other than an organization described in section 170(c), and

(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, an organization described in section 170(c) or is to be retained by the trust for such a use.

[3]A charitable remainder unitrust is defined by sec. 664(d)(2) as:

a trust—

(A) from which a fixed percentage (which is not less than 5 percent) of the net fair market value of its assets, valued annually, is to be paid, not less often than annually, to one or more persons (at least one of which is not an organization described in section 170(c) and, in the case of individuals, only to an individual who is living at the same time of the creation of the trust) for a term of years (not in excess of 20 years) or for the life or lives of such individual or individuals,

(B) from which no amount other than the payments described in subparagraph (A) may be paid to or for the use of any person other than an organization described in section 170(c), and

(C) following the termination of the payments described in subparagraph (A), the remainder interest in the trust is to be transferred to, or for the use of, an organization described in section 170(c) or is to be retained by the trust for such a use.

[4]A pooled income fund is defined by sec. 642(c)(5) as:

a trust—

(A) to which each donor transfers property, contributing an irrevocable remainder interest in such property to or for the use of an organization described in section 170(b)(1)(A) (other than in clauses (vii) or (viii)), and retaining an income interest for the life of one or more beneficiaries (living at the time of such transfer),

(B) in which the property transferred by each donor is commingled with property transferred by other donors who have made or make similar transfers,

(C) which cannot have investments in securities which are exempt from the taxes imposed by this subtitle,

(D) which includes only amounts received from transfers which meet the requirements of this paragraph,

(E) which is maintained by the organization to which the remainder interest is contributed and of which no donor or beneficiary of an income interest is a trustee, and

(F) from which each beneficiary of an income interest receives income, for each year for which he is entitled to receive the income interest referred to in subparagraph (A), determined by the rate of return earned by the trust for such year.

creation and validity of testamentary trusts is governed by State law, not the Internal Revenue Code. However, whether a particular transfer does qualify for an estate tax charitable deduction is a matter of Federal concern. Section 2055(e)(2) merely prescribes the requirements for a trust *if* the decedent wishes to obtain the benefit of a tax deduction. Thus, while section 2055(e)(2) affects the choice as to the form which a transfer *may* take, it does not mandate the form which a transfer *must* take. In this respect, its affect is no different from that of many tax statutes.

Traditionally, to invalidate a taxing statute on the basis that the statute offends due process, it must be shown that Congress did a "wholly arbitrary thing," or "found equivalence where there was none" or that they "laid a burden unrelated to privilege." *United States v. Manufacturers Nat. Bank,* 363 U.S. 194, 201 (1960); *Burnet v. Wells,* 289 U.S. 670, 679 (1933); *Cohan v. Commissioner,* 39 F.2d 540, 545 (2d Cir. 1930); *Sakol v. Commissioner,* 67 T.C. 986, 995 (1977), affd. 574 F.2d 694 (2d Cir. 1978), cert. denied 439 U.S. 859 (1978). The days when a court would sit as a superlegislature to judge the wisdom or desirability of a statute have passed. So long as a statute meets the test of minimum rationality or the conceivable basis standard, it will be held not to offend equal protection. See *New Orleans v. Dukes,* 427 U.S. 297, 303, 306 (1976); *McGowen v. Maryland,* 366 U.S. 420, 426 (1961); *First Nat. Bank of Oregon v. United States,* 215 Ct. Cl. 609 613–615, 571 F.2d 21, 23–24 (1978), cert. denied 439 U.S. 827 (1978); *Kellems v. Commissioner,* 58 T.C. 556, 558 (1972), affd. per curiam 474 F.2d 1399 (2d Cir. 1973), cert. denied 414 U.S. 831 (1973).

The provisions of section 2055(e)(2) do limit the flexibility of the trust device as a vehicle for split-interest transfers and are more restrictive than the provisions in effect prior to the enactment of such section. Also, the application of section 2055(e)(2) may result in some unfairness, and it certainly adds substantial complexity to an area already complex. However, Congress found that charitable deductions were being allowed for transfers which resulted in little or no benefit to charity, and we cannot say that the response of Congress was inappropriate to the problems it perceived. Nor can we say that section 2055(e)(2) created classifications which did not have a fair and substantial relation to the object of the legislation. See *Helver-*

*ing v. City Bank Co.*, 296 U.S. 85, 90 (1930); *Burnet v. Wells, supra; First Nat. Bank of Oregon v. United States, supra; Riverfront Groves, Inc. v. Commissioner*, 60 T.C. 435, 444 (1973). Accordingly, we hold that section 2055(e)(2) is constitutional.

Moreover, had the petitioner desired to obtain an estate tax charitable deduction, albeit at the expense of losing the trust's flexibility, the trustee could have applied to the Oregon State courts to reform the trust so as to qualify it under section 2055(e)(2). See sec. 2055(e)(3) and the regulations thereunder.

The next issue to be considered is whether the estate improperly failed to report certain dividends on the estate tax return. In his notice of deficiency, the Commissioner determined that dividends in the amount of $2,082[5] had been omitted from the estate tax return. In its brief, the estate argues, for the first time, that seven of such dividends were improperly included since the shareholder-of-record dates were after the decedent's date of death.

Where a dividend is paid after the decedent's death, but the declaration date and shareholder-of-record date are on or before the date of the decedent's death, such dividend is includable as a separate asset in the decedent's gross estate. Sec. 20.2033–1(b), Estate Tax Regs. Similarly, where a dividend has been declared payable to stockholders of record as of a date after the decedent's death, but the security on which such dividend was declared was selling "ex-dividend" on the decedent's date of death, the fair market value of such security must be increased to reflect the right to receive such dividend. Sec. 20.2031–2(i), Estate Tax Regs.; *Estate of McNary v. Commissioner*, 47 T.C. 467, 470–471 (1967).

The petitioner generally has the burden of proof on issues raised in the notice of deficiency. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933). Neither party has offered any evidence with respect to the omitted dividends. In its brief, the estate represented that in the

---

[5]Such amount was computed by using figures "rounded" to the nearest whole dollar amount. In the petition, the estate admitted that dividends in the amount of $2,081.55 had been omitted from the estate tax return, and we understand that the estate does not make an issue of the discrepancy between such amounts.

case of seven stocks owned by the decedent, the shareholder-of-record dates were 2 to 4 business days after her death,[6] but the estate does not indicate the "ex-dividend" dates for such stocks. Representations in a brief cannot substitute for evidence. Thus, we have no evidence as to the shareholder-of-record dates or the "ex-dividend" dates of such stocks. In the absence of any such evidence, we must sustain the Commissioner's determination.

Moreover, it is well settled that this Court will not consider issues raised for the first time on brief when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. *Estate of Horvath v. Commissioner*, 59 T.C. 551, 555 (1973); *Riss v. Commissioner*, 56 T.C. 388, 401 (1971), supplemental opinion 57 T.C. 469 (1971), affd. on this issue 478 F.2d 1160 (8th Cir. 1973); *Theatre Concessions, Inc. v. Commissioner*, 29 T.C. 754, 760–761 (1958). It is clear from the record in this case that the Commissioner was not aware at or before trial that the estate intended to raise the dividend issue. Thus, even if evidence were now available, we could not consider the estate's contentions on this issue since the matter was not timely raised.

*Decision will be entered for the respondent.*

---

[6]Generally, stocks trade "ex-dividend" 4 or 5 business days preceding the shareholder-of-record date fixed by the issuing corporation or preceding the date of the closing of the transfer books. See New York Stock Exchange rule 235.

