ESTATE OF KENNETH F. SMITH, DECEASED, EDITHE L. SMITH, ADMINISTRATRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Smith v. Commissioner
Docket No. 7735-86
United States Tax Court
T.C. Memo 1989-399; 1989 Tax Ct. Memo LEXIS 397; 57 T.C.M. (CCH) 1163; T.C.M. (RIA) 89399; July 31, 1989
James T. Knight and James P. Knight, Jr., for the petitioner. Marsha R. Yowell, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency of $ 27,922.00 in petitioner's Federal income tax for the taxable year 1981. The issues to be decided are: 1) whether the property known as Sierra Vista was community property or separate property on the date the property was sold; and 2) whether respondent waived his right to proceed against petitioner. FINDINGS OF FACT Some of the facts have been stipulated. Petitioner and respondent each objected to certain stipulated *398 facts on the grounds of relevancy and materiality. The stipulated facts that we find to be relevant and material are included in the following findings of fact. At the time of the filing of the petition in this case, Edithe L. Smith (hereinafter petitioner) lived in Ocean Springs, Mississippi, and was the administratrix of the estate of the deceased Kenneth F. Smith (hereinafter Kenneth). Petitioner was the first and fourth wife of Kenneth. Joyce E. Smith (hereinafter Joyce) was Kenneth's third wife. Joyce married Kenneth in Las Vegas, Nevada, on October 26, 1968. During their marriage, Kenneth and Joyce resided in Nevada, a community property state. On May 10, 1974, Joyce and Kenneth purchased unimproved real property on Sierra Vista in Las Vegas, Nevada. On October 29, 1974, Kenneth and Joyce executed a quitclaim deed transferring the Sierra Vista property to Kenneth F. Smith and Joyce Ellen Smith as Trustees of Kenneth and Joyce Community Property Trust of September 12, 1974. The trust agreement provided that all property held by the trust was community property. Kenneth and Joyce separated in 1979 and Kenneth filed for divorce in the fall of 1979. On September 12, 1980, petitioner *399 was made Kenneth's guardian by the Eighth Judicial District Court of the State of Nevada in and for the County of Clark (hereinafter Nevada District Court). On December 5, 1980, petitioner presented to the Nevada District Court her petition for authority to sell Kenneth's one-half undivided interest in the Sierra Vista property. On December 8, 1980, the Nevada District Court entered an order authorizing the sale of Kenneth's interest in the Sierra Vista property. On January 13, 1981, Joyce (in her own behalf) and petitioner, as guardian for Kenneth, contracted to sell the Sierra Vista property to Arthur A. Passarelli for $ 300,000.00. In accordance with a written escrow agreement, a check for $ 10,000.00 was issued by Mr. Passarelli and placed in escrow with the First American Title Insurance Company. According to the escrow agreement, the balance of $ 290,000.00 was to be paid on closing, with Joyce to receive one-half of the proceeds of the sale and petitioner to receive one-half of the proceeds on behalf of Kenneth. Petitioner advertised the proposed sale to be held at her attorney's office at 10:00 a.m. on February 20, 1981. On February 20, 1981, at 10:00 a.m., the sale *400 was conducted and Kenneth's interest in the Sierra Vista property was sold, together with Joyce's interest, for $ 300,000.00 to Arthur A. Passarelli. Petitioner, as guardian of the person and estate of Kenneth F. Smith, Trustee, and Joyce Ellen Smith, Trustee, signed a deed of sale granting the Sierra Vista property to Arthur Passarelli. This deed was dated February 11, 1981, and notarized March 9, 1981. On February 25, 1981, petitioner, as Kenneth's guardian, petitioned the Nevada District Court to confirm the sale of Kenneth's undivided interest in the Sierra Vista property. On March 4, 1981, a Memorandum of Understanding was executed by Joyce, Frank A. Schreck, Esquire (Joyce's representative in the divorce action), petitioner, and Eric Zubel, Esquire (Kenneth's representative in the divorce action). The Memorandum of Understanding provided that the $ 300,000.00 in cash representing the proceeds from the sale of the Sierra Vista property would become the separate property of Joyce. The Memorandum of Understanding required Joyce to retain at least $ 150,000.00 of the $ 300,000.00 cash proceeds of the Sierra Vista property in a separate savings account until a final property *401 settlement could be executed by the parties. On March 6, 1981, the Nevada District Court heard petitioner's petition to confirm the sale of Kenneth's interest in the Sierra Vista property and found that the sale was legally made and fairly conducted. By order dated March 9, 1981, the Nevada District Court confirmed the sale of Kenneth's undivided one-half interest. On March 11, 1981, the deed of sale was recorded, and pursuant to the escrow instructions, two checks were issued. One check, number 3774, was issued to Joyce in the amount of $ 148,571.43 for her one-half interest in the Sierra Vista property. The other check, number 3775, was issued to petitioner in the amount of $ 148,571.44 for Kenneth's one-half interest in the Sierra Vista property. Joyce received her check on March 11, 1981. On March 13, 1981, Joyce received check number 3775, which had been endorsed by petitioner. On March 18, 1981, Joyce and petitioner entered into a Property Settlement Agreement. The Property Settlement Agreement provided that Kenneth transferred to Joyce as her separate property all of his interest in the proceeds ($ 300,000.00) from the sale of the Sierra Vista property to Arthur *402 A. Passarelli. On April 16, 1981, Joyce and petitioner amended the March 18, 1981, Property Settlement Agreement, but made no change regarding the proceeds from the sale of the Sierra Vista property. Joyce and Kenneth were divorced on April 24, 1981. On April 27, 1981, petitioner married Kenneth for the second time. Joyce reported a capital gain on the receipt of 50 percent of the proceeds from the sale of the Sierra Vista property on her 1981 Federal income tax return. OPINION As a preliminary matter, we must decide whether certain testimony is admissible. At trial, petitioner objected to the admission of any testimony by Joyce Smith on the grounds that such testimony would be barred by the Mississippi Dead Man's Statute. On brief, petitioner withdrew this objection. At trial, respondent asked Joyce whether she had agreed to pay the income tax on the sale of the Sierra Vista property. Joyce answered, "I did not agree to pay tax on the - all of the proceeds, only on my portion." Petitioner objected to the admission of this question on the grounds of the parol evidence rule and Rules 701 and 704 of the Federal Rules of Evidence.
Since *403 we are making a determination under Nevada law regarding the effect of a written instrument, we must look to Nevada's parol evidence rule in deciding whether or not to exclude extrinsic evidence. Anderson v. Commissioner, 92 T.C. 138, 171 (1989). Under Nevada law, "If the terms of an agreement are clear, definite and unambiguous, parol evidence may not be introduced to vary those terms." Crow-Spieker #23 v. Robinson, 97 Nev. 302, 629 P.2d 1198, 1199 (1981). However, if the written contract is silent on any matter, the existence of a separate oral agreement on that matter may be proven by parol evidence. Crow-Spieker #23 v. Robinson, 629 P.2d at 1199. The Memorandum of Understanding does not contain any provision regarding the Federal tax consequences of the sale of the Sierra Vista property. Therefore, the Memorandum of Understanding is silent on the matter in question. Accordingly, we find that Joyce Smith's testimony does not vary or contradict the terms of the Memorandum of Understanding. Consequently, the parol evidence rule does not exclude the testimony at issue. Rule 701 of the Federal Rules of Evidence *404 provides that "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Petitioner contends that Joyce Smith's testimony is an improper opinion by a lay witness. Petitioner's objection is misplaced. The witness did not testify regarding her opinion of the tax consequences of the sale of the Sierra Vista property; she merely testified regarding whether she in fact had made an agreement to pay the income tax on the sale of the Sierra Vista property. Therefore, Rule 701 of the Federal Rules of Evidence is inapplicable. Rule 704(a) of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Petitioner contends that Joyce Smith's testimony was opinion testimony on an ultimate issue of law. As we stated *405 before, Joyce Smith's testimony was not opinion testimony, so Rule 704(a) of the Federal Rules of Evidence does not apply. Consequently, we admit into evidence the testimony at issue. The first issue to be decided is whether on the date of the sale to Arthur Passarelli the Sierra Vista property was community property or separate property. Petitioner bears the burden of proof on this issue. Rule 142(a). [1] Petitioner does not dispute respondent's determination that if the property was community property on the date of the sale, Kenneth realized a capital gain. Respondent contends the sale occurred for Federal tax purposes on February 20, 1981, when the sale was conducted at petitioner's attorney's office, and further contends the property was community property at this time. Petitioner contends the sale occurred for Federal tax purposes on March 11, 1981, the date the deed was recorded and escrow closed. Petitioner further contends the Memorandum of Understanding signed on March 4, 1981, converted the Sierra Vista property from community property to separate property, so that on the date of the sale the property was separate property of Joyce. *406 Respondent argues neither the Memorandum of Understanding nor any other agreement converted the Sierra Vista property from community property to separate property of Joyce. We will first consider petitioner's contention that the Memorandum of Understanding converted the Sierra Vista property from community property to separate property. In general, under Nevada law all property acquired after marriage by either husband or wife, or both, is community property. Nev. Rev. Stat. Ann. section 123.220 (Michie 1986). One exception to this general rule is that an agreement in writing between the spouses can provide that property acquired after marriage by either the husband or the wife is separate property of either the husband or the wife. Nev. Rev. Stat. section 123.220. However, all property acquired after marriage is presumed to be community property. In re Wilson's Estate, 56 Nev. 353, 53 P.2d 339, 343 (1936). *407 This presumption may be rebutted by clear and convincing evidence. Kelly v. Kelly, 86 Nev. 301, 468 P.2d 359, 364 (1970). The burden of proof rests on the party claiming that the property is not community property. In re Wilson's Estate, 53 P.2d at 343. Whether an agreement transmutes the character of property is an issue of fact. See Haseltine v. Haseltine, 203 Cal. App. 2d 48, 21 Cal. Rptr. 238 (1962). Petitioner argues that the Memorandum of Understanding satisfies the requirements of Nev. Rev. Stat. Ann. section 123.220 (Michie 1986) and converts the Sierra Vista property from community property to the separate property of Joyce. The Memorandum of Understanding provides that the community assets of Kenneth and Joyce to become the separate property of Joyce Smith include $ 300,000.00 in cash representing the proceeds from the sale of the Sierra Vista property. However, the Memorandum of Understanding does not expressly provide the Sierra Vista property itself becomes the separate property of Joyce Smith. No provision clearly transmutes the character of the property. Petitioner argues that the Memorandum *408 of Understanding transferred ownership to Joyce because the Memorandum transferred all the benefits and burdens of ownership to Joyce. We disagree. Although one benefit of ownership, the right to the proceeds of the anticipated sale, passed to Joyce, no other benefits or burdens passed under the Memorandum of Understanding. If the planned sale had fallen through and there were no sale proceeds, the provision in the Memorandum of Understanding relating to the property would have been of no effect. The Memorandum of Understanding only provides for the proceeds of the anticipated sale, not the property itself. We find that the Memorandum of Understanding did not transmute the character of the Sierra Vista property from community property to the separate property of Joyce. Petitioner has not introduced evidence sufficient to show that any other agreement changed the property from community property to separate property of Joyce. We note that since the Property Settlement Agreement of March 18, 1981, was signed after the date petitioner contends the sale occurred, the Property Settlement Agreement could not transmute the character of the Sierra Vista property from community property *409 to separate property. Petitioner has not presented clear and convincing evidence that the Sierra Vista property was converted to separate property before the sale to Arthur Passarelli. Therefore, petitioner has not overcome the presumption in favor of the property being community property. Since petitioner did not prove the Sierra Vista property became separate property before either of the proposed dates of sale, we need not decide which of the proposed dates was the actual date of sale for Federal tax purposes. Accordingly, we find that on the date of the sale to Arthur A. Passarelli, whether that date was February 20, 1981, or March 11, 1981, the Sierra Vista property was community property. The next issue for our consideration is whether respondent waived his right to proceed against petitioner. Petitioner first raised this issue at trial. Respondent did not object to the introduction of evidence on this issue. Accordingly, we will consider the issue. Rule 41(b)(1). Petitioner contends that respondent is attempting to collect the same tax twice. Petitioner has the burden of proof on this issue. Rule 142(a). Joyce reported a capital gain on the receipt of one half of *410 the proceeds of the sale of the Sierra Vista property on her 1981 Federal income tax return. At trial, petitioner's counsel asked Joyce whether she had "receive[d] a notice from the Internal Revenue Service attempting to tax [her] on the remaining half." Joyce replied that she had. Joyce testified that she won her case in the Appellate Division of the Internal Revenue Service. Joyce testified that she did not concede the issue of gain on the sale of the Sierra Vista property, but that she did make some concessions. Petitioner introduced no other evidence on this issue. Petitioner argues that respondent cleverly attempted to circumvent the law prohibiting the collection of the same tax from more than one taxpayer by apparently conceding his case against Joyce Smith and then proceeding against the Petitioner. However, [respondent] has received the benefit of his proposed assessment against Joyce Smith by using it to force concessions in other tax issues with the result that [respondent] did, in fact, collect additional tax revenue because of the proposed assessment of the tax on the sale of the Sierra Vista property against Joyce Smith. We refuse to speculate about *411 respondent's motives in Joyce's settlement. Petitioner has introduced no evidence to show that respondent settled with Joyce in a devious attempt to collect the same tax twice. We find that petitioner has failed to prove that respondent has already collected tax on the entire gain from the sale of the Sierra Vista property. As a final matter, petitioner presented on brief an issue involving section 66 that was not raised in her pleadings or at trial. It is well settled that this Court will not consider issues raised for the first time on brief, when to do so prevents the opposing party from presenting evidence that he might have introduced if the issue had been timely raised. Estate of Gillespie v. Commissioner, 75 T.C. 374, 381 (1980); Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973); Riss v. Commissioner , 56 T.C. 388, 401 (1971), Supplemental Opinion 57 T.C. 469 (1971), affd. on this issue 478 F.2d 1160 (8th Cir. 1973); Theatre Concessions, Inc. v. Commissioner, 29 T.C. 754, 760-761 (1958). It is clear that neither prior to the submission of this case, nor at the time he *412 filed his brief, was respondent aware that petitioner intended to raise this issue. Accordingly, we must hold that this issue has not been raised timely. Nevertheless, we have examined the merits of petitioner's position, and we find there is absolutely no basis for rejecting or modifying respondent's determination. Petitioner bears the burden of proof on this issue. Rule 142(a). Petitioner did not meet her burden of proof. Petitioner did not testify in this case. As this Court stated in Sonnenborn v. Commissioner, 57 T.C. 373, 383 (1971), The burden of proof was upon petitioners and we cannot assume that the testimony of a critical absentee witness would have been favorable to them. Indeed, the normal inference is that it would have been unfavorable. * * * [quoting Pollack v. Commissioner, 47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968).] See also Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). The section 66 issue raised by petitioner for the first time on brief was totally devoid of merit. To reflect the *413 foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩