ORVILLE W. FORTE, JR. and ESTATE OF CONSTANCE S. FORTE, DECEASED, ORVILLE W. FORTE, JR. EXECUTOR, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Forte v. Comm'r
Docket No. 26782-88 United States Tax Court
T.C. Memo 1991-36; 1991 Tax Ct. Memo LEXIS 56; 61 T.C.M. (CCH) 1754; T.C.M. (RIA) 91036; January 29, 1991, Filed *56 Decision will be entered under Rule 155. Carl R. Croce, for the petitioners. Madlyn B. Coyne, for the respondent. HAMBLEN, Judge. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 78,633 and $ 51,742 in Orville and Constance Forte's 1981 and 1982 Federal income tax, respectively. After concessions by both parties, the sole issue involves the value of property contributed by the Fortes in 1981 to the State of New Hampshire Fish and Game Department and the consequent amount of the charitable contribution deduction allowable to them for 1981 and 1982. Preliminary matters related to the primary issue include: (1) Whether the testimony and report of petitioners' expert should be excluded under Rule 143(f); [1] (2) whether the notice of deficiency in this case was erroneous, and, if so, whether petitioners' burden of going forward with the evidence is shifted to respondent; and (3) whether petitioners are entitled to the 50-percent limitation, rather than the claimed 30-percent limitation, for the 1981 and 1982 claimed charitable deduction under section 170(b)(1)(A). *57 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Orville W. Forte, Jr. (hereinafter petitioner), resided in Naples, Florida, at the time the petition in this case was filed. Constance S. Forte was petitioner's wife during the taxable years 1981 and 1982. Mrs. Forte died prior to the trial in this case. (The plural "petitioners" will hereinafter refer to Mr. Forte and his late wife's estate.) In May 1970, petitioner and members of his family incorporated Pelfor Corporation (hereinafter Pelfor) under the laws of the State of Massachusetts. In 1981, petitioner was the president of Pelfor and owned 42.8 percent of the corporation's outstanding stock. Petitioner's wife owned 26.9 percent of the outstanding stock, while the remaining stock was owned by David G. Pellerin, petitioner's son-in-law, and Constance Pellerin, petitioner's daughter, and other family members. On June 8, 1973, petitioner and his wife transferred a large parcel of raw land to Pelfor. This transfer included the acreage and lots at issue in this case. Pelfor began a land development *58 project known as the Rowell Hill subdivision. Pelfor secured subdivision approval for 91 single-family building lots in Rowell Hill. Between 1970 and 1981, petitioner and his wife advanced loans to Pelfor in varying amounts totaling $ 554,888. Because of Pelfor's debt burden and need for cash, petitioner and his wife reacquired from Pelfor nine building lots and 60 acres of conservation land known as the Chadwick Meadow Conservancy in 1981. Both the building lots and the Chadwick Meadow Conservancy were part of the Rowell Hill Subdivision. (The nine building lots and the Chadwick Meadow Conservancy shall hereinafter together be referred to as the subject property.) For purposes of valuing the subject property, transferred by Pelfor to petitioner and his wife, the services of Robert H. Gernand, a local independent real estate appraiser, were utilized. Mr. Gernand was a prominent local appraiser with more than 30 years of experience appraising real estate in the area in question. By letter dated October 30, 1981, Mr. Gernand, using a sales comparison approach, valued eight of the nine building lots at $ 186,000 and valued the 60-acre Chadwick Meadow Conservancy at $ 3,000. *59 The value of the ninth lot was not addressed by Mr. Gernand but was determined by petitioner to be $ 20,000. Therefore, for purposes of the transfer from Pelfor to petitioner and his wife, the subject property's value was determined to be $ 209,000 ($ 186,000 + $ 3,000 + $ 20,000). A copy of Mr. Gernand's opinion letter was attached to the Fortes' 1981 Federal income tax return. In exchange for the subject property, petitioner and his wife discharged $ 209,000 of indebtedness owed to them by Pelfor. Pelfor reported a gain of approximately $ 110,000 on its Federal income tax return for the taxable year 1981 attributable to the sale of the subject property. Petitioner and his wife contributed the subject property to the State of New Hampshire Fish and Game Department by deed on December 21, 1981. At the time of the gift, the Chadwick Meadow Conservancy was under previous conservation restrictions. The deed, conveying the subject property to the State of New Hampshire, conveyed a fee simple interest. Petitioner and his wife retained a right of reversion in the subject property so that, if the State of New Hampshire failed to meet any of the conservation terms and conditions contained *60 in the deed, the subject property would revert to them or their heirs. Petitioner and his wife also retained a right for their son-in-law to remove up to 10 cords of hardwood per year from the building lots for the remainder of their son-in-law's life. The highest and best use for the nine building lots at the time of the conveyance was as residential lots while the highest and best use of the 60-acre Chadwick Meadow Conservancy was for conservation purposes. Petitioner and his wife claimed a $ 209,150 charitable contribution deduction on their 1981 Federal income tax return for the gift of the subject property. This figure was based upon Mr. Gernand's previous valuation of the subject property and the $ 150 cost of Mr. Gernand's valuation report. Petitioner and his wife used $ 97,012 of the charitable contribution deduction in the first year and carried the remaining $ 112,138 into their 1982 taxable year. The entire remaining charitable contribution carryover was used for the 1982 taxable year by the Fortes. On July 14, 1988, respondent issued a notice of deficiency to petitioners denying, among other things, petitioners' charitable contribution deduction for the taxable *61 years 1981 and 1982. The notice of deficiency sets the value of the subject property at $ 4,600. Petitioners timely filed their petition in this Court on October 14, 1988. During the course of preparing for trial, petitioners were led to believe by Elsie Heiser that Mr. Gernand was deceased. Ms. Heiser had purchased Mr. Gernand's appraisal business after Mr. Gernand's valuation of the subject property but before the initiation of these proceedings before us. Ms. Heiser prepared a report, dated December 12, 1985, setting forth the relevant materials in Mr. Gernand's files concerning his valuation of the subject property. The case was continued from the June 5, 1989, trial calendar in Boston, Massachusetts, in order to give both parties an opportunity to secure expert witnesses. Petitioners did not secure an expert witness because they felt that Mr. Gernand's opinion letter of October 30, 1981, was the best evidence they could present to establish the property's fair market value. Petitioners did not discover that Mr. Gernand was indeed alive until February 21, 1990, one day before petitioners filed their trial memorandum. Due to these unusual circumstances, petitioners did *62 not cause Mr. Gernand to prepare an expert witness report conforming to Rule 143(f) in anticipation of trial. Instead, at trial, petitioners offered the opinion letter of Mr. Gernand, dated October 30, 1981, to establish the value of the property at the time it was transferred from Pelfor to petitioner and his wife. Further, an expert witness report was offered by petitioners containing only Mr. Gernand's opinion and qualifications. No facts, data, or analysis used by Mr. Gernand in reaching his opinion were included in the expert witness report. Respondent utilized the services of Charles W. Thompson to determine the value of the subject property. Mr. Thompson is a member of the American Institute of Real Estate Appraisers and a Senior Real Property Appraiser in the Society of Real Estate Appraisers. He has over 22 years of appraisal experience in the private sector. Mr. Thompson qualified as an expert witness. Mr. Thompson employed a comparative sales approach and a present worth analysis of future individual lot sales in reaching his determination of the subject property's value. He further discounted his projections of future lot sales back to the date of contribution *63 to establish his estimate of the subject property's "before contribution" value of the subject property. Mr. Thompson valued the subject property at $ 77,500 instead of the $ 4,600 stated in the notice of deficiency. OPINION The issue before us is the value of the subject property at the time of its contribution by petitioner and his wife to the State of New Hampshire Fish and Game Department. However, in addition to the issue of valuation, both parties raise preliminary matters that must be addressed. Respondent brought forth a motion to exclude Mr. Gernand's testimony and to exclude petitioners' expert witness report. Respondent asserts that his motion should be granted as Mr. Gernand has produced no figures, calculations, or data on which he based his estimate of valuation. Further, respondent submits that petitioners' expert witness report does not satisfy Rule 143(f) and that it limits respondent's ability to examine the data Mr. Gernand used in his valuation assessment. Next, petitioner contends that the position taken by respondent in the notice of deficiency was clearly erroneous, thereby rebutting respondent's presumption of correctness and shifting to respondent the *64 burden of going forward. Finally, petitioners, on brief, declare they mistakenly treated the subject property as capital gain property under section 170(b)(1)(A), subject to a 30-percent annual limitation on deductions, instead of the general 50-percent limitation. Petitioners request the Court to allow the higher general limitation of 50 percent. In a preliminary ruling, we limited the scope of testimony at the trial to the sole question of the subject property's value. We allowed the testimony of Mr. Gernand to the extent that it was consistent with, and included in, petitioners' expert witness report. At trial, we reserved ruling on respondent's motion to exclude Mr. Gernand's testimony altogether. Our ruling will be discussed herein, infra. Further, we excluded the report and testimony of Ms. Heiser. Preliminary Matters
1. Respondent's Motion to Exclude Petitioners' Expert Witness
At trial, we reserved ruling on respondent's motion to exclude the testimony of Mr. Gernand based on petitioners' failure to comply with Rule 143(f) in preparing an expert witness report. Rule 143(f) in pertinent part states: Unless otherwise permitted by the Court upon *65 timely request, any party who calls an expert witness shall cause that witness to prepare a written report for submission to the Court and to the opposing party. The report shall set forth the qualifications of the expert witness and shall state the witness' opinion and the facts or data on which that opinion is based. * * * Additional direct testimony with respect to the report may be allowed to clarify or emphasize matters in the report, to cover matters arising after the preparation of the report, or otherwise at the discretion of the Court. * * * Petitioners' expert did not prepare an expert witness report following the guidelines of Rule 143(f). The report proffered by petitioners does not include any of the facts, data, and analysis relied upon by Mr. Gernand in reaching his opinion as to valuation. However, Rule 143(f) is, to some extent, discretionary, allowing the Court to admit an expert witness' testimony although the provisions of Rule 143(f) are not met if there is good cause and the opposing party is not unduly prejudiced. We find that the peculiar circumstances relating to petitioners' mistaken belief that Mr. Gernand was dead, when *66 in fact he was not, excuse petitioners' noncompliance with Rule 143(f). We further find that respondent will not be unduly prejudiced by allowing into evidence the expert witness report and Mr. Gernand's limited testimony. The weight afforded the report and such testimony is another question. For purposes of admissibility, however, we hold that the expert witness report and Mr. Gernand's testimony at trial are properly admitted. 2. Notice of Deficiency
Next, petitioner argues that respondent's position in the notice of deficiency was clearly erroneous. As such, petitioner argues that respondent loses the presumption of correctness and must now carry the burden of going forward. Respondent's notice of deficiency is presumed to be correct. The burden of overcoming this presumption rests upon petitioner. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933). If petitioner proves by a preponderance of the evidence that the deficiency determined is clearly erroneous, the presumption of correctness is rebutted. Cohen v. Commissioner, 266 F.2d 5 (9th Cir. 1959). However, whether or not the presumption of correctness is rebutted, *67 and if so shifting the burden of going forward, petitioner still maintains the burden of proof. United States v. Rexach, 482 F.2d 10, 16 (1st Cir. 1973). Petitioners argue that respondent asserted only one position with respect to the allowable charitable deduction in the notice of deficiency. They further argue that respondent's position was clearly erroneous and invalid. Petitioners point to respondent's position in his pretrial memorandum, dated February 20, 1990, that the subject property should be valued as a "restricted gift." Petitioners assert that this position is inconsistent with respondent's admission by answer that the gift of the subject property qualified as a "Qualified Conservation Contribution" under section 170(h), requiring valuation on the basis of fair market value immediately before the gift. We agree that respondent's admission that the gift qualifies as a "Qualified Conservation Contribution" is inconsistent with his position in his pretrial memorandum. However, such inconsistency does not shift the burden of going forward. Rule 142(a) sets forth that "The burden of proof shall be upon the petitioner, except as otherwise provided *68 by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon respondent." Petitioner further argues that the "before and after" valuation method constitutes a new matter and, as such, the burden of proof as to that matter is placed on respondent. We disagree. In the instant case, the issue before us is the value of the subject property. The burden of proof is not placed on respondent because respondent concedes part of the amount set forth in the deficiency or because a different valuation method was employed in determining the issue of valuation. [2] Therefore, while we agree that respondent argued two separate valuation methods, we hold that the new valuation approach is not a new issue and, as such, petitioners maintain the burden of proof in the instant case. *69 3. Section 170(b)(1)(A) Limitation on Annual Charitable Deductions
Finally, petitioners raise a new issue in their brief. Petitioners contend that they mistakenly treated the subject property as capital gain property under section 170(b)(1)(A), subject to a 30-percent yearly limitation for deductions, instead of the general 50-percent allowance. Without commenting on the merit of petitioners' position, we hold that it would be inappropriate to consider this issue because petitioners' raised it for the first time on brief and because the opposing party was not afforded the time to prepare a rebuttal to petitioners' position had the issue been timely raised. Estate of Gillespie v. Commissioner, 75 T.C. 374, 381 (1980). Issue for Determination
Petitioners and respondent have stipulated that the charitable contribution qualifies as a "Qualified Conservation Contribution" pursuant to section 170(h). The parties further stipulated that the right of reversion retained by petitioners in the deed conveying the subject property to the State of New Hampshire Fish and Game Department does not affect the value of the subject property to determine the amount *70 of the allowable charitable contribution deduction of petitioner and his wife. The key factor in the valuation determination is deciding just what was contributed by petitioner and his wife to the State of New Hampshire. Petitioner and his wife donated the subject property outright by deed. They did, however, retain two interests in the subject property. First, they retained a right of reversion, only to become effective if the State of New Hampshire breached the covenants under which the deed was executed. Next, they retained a right for a family member to cut 10 cords of wood off the building lots each year. Both parties have stipulated that the right of reversion has no impact on the value of the subject property. Further, respondent failed to argue on brief or during the trial that the right to cut 10 cords of wood diminished the value of the gift. Absent such argument, we conclude that the rights retained by the Fortes have no value at all. Consequently, we determine that the value of the subject property is not affected and is undiminished by the rights retained by the Fortes. Further, the parties stipulated that the charitable contribution of the subject property *71 qualifies as a "Qualified Conservation Contribution" pursuant to section 170(h). Section 170 allows an individual a deduction for charitable contributions, subject to certain percentage limitations, with a carryover for excess contributions. Sec. 170(b) and (d). If the charitable gift consists of property other than cash, the amount of the contribution is the fair market value of the property on the date of the donation, reduced, when necessary, as provided in section 170(e)(1). Sec. 1.170A-1(c)(1), Income Tax Regs. The fair market value of property is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of all relevant facts. Sec. 1.170A-1(c)(2), Income Tax Regs. The fair market value of property on any given date is a question of fact to be determined from all of the relevant evidence in the record. Jarre v. Commissioner, 64 T.C. 183, 188 (1975); Kaplan v. Commissioner, 43 T.C. 663, 665 (1965). We have previously determined that the value of petitioners' gift to the State of New Hampshire Fish and Game *72 Department was the same as if the Fortes retained no interest. We, therefore, proceed to determine the fair market value of the subject property at the time it was donated to the charitable donee without qualification or diminution of any retained interest. This value will correlatively determine the proper amount of the charitable contribution deduction allowed to petitioner and his wife from their donation of the subject property. Petitioners and respondent each rely upon valuations prepared by their respective experts. Expert opinion is admissible if it will assist the trier of fact to understand evidence that will determine the fact in issue. See Fed. R. Evid. 702. The trier of fact must weigh such evidence in light of the demonstrated qualifications of the experts and all other credible evidence. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970). We are not bound by the opinion of any expert witness when that opinion is contrary to our judgment. Estate of Kreis v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955), affg. a Memorandum Opinion of this Court. An expert opinion *73 unsupported by independent evidence is not credible. Rose v. Commissioner, 88 T.C. 386, 401, 418 (1987), affd 868 F.2d 851 (6th Cir. 1989); Symington v. Commissioner, 87 T.C. 892, 902 (1986). We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co., 304 U.S. 282, 82 L. Ed. 1346, 58 S. Ct. 932 (1938). While we admitted into evidence petitioners' expert witness report and Mr. Gernand's testimony, we afford both the report and the testimony very little weight. The expert witness report is devoid of any basis on which Mr. Gernand based his valuation opinion. Absent such data, it is impossible to examine the rationale and steps Mr. Gernand utilized in coming to his conclusions. At trial, Mr. Gernand was limited in his testimony to the scope of the expert witness report. While he testified that he used comparable sales in the area to reach his conclusion about the subject property's value, he was not able to go into any detail as to what adjustments were made for differences between the comparables and the lots in question. As the expert witness report contained no *74 information about discounting comparables or other devices used by Mr. Gernand in coming to his valuation conclusions, his testimony lacks any substance on which to base his opinions. Because we do not know the basis for his conclusions, we cannot afford Mr. Gernand's testimony much weight. Therefore, we are not persuaded by petitioners' skeletal expert witness report or Mr. Gernand's testimony at trial. Respondent's expert witness, Mr. Thompson, set forth the criteria and the rationale he used in arriving at his opinion of value. Mr. Thompson employed an analysis of the present worth of the future sales of the individual lots. As a first step in this approach, he estimated the fair market value of the lots as though each lot was being sold separately to a different individual. Employing the comparative sales approach, Mr. Thompson determined the retail value of the subject property to be $ 170,000. Mr. Thompson then concluded that the nine lots could not be sold at one time to nine individual buyers. Therefore, he postulated that one lot would be sold in each of the first two years while two lots would be sold in each of the third, fourth, and fifth years and the remaining *75 lot would be sold in the sixth year. Mr. Thompson, after adjusting for taxes during the six years and for appreciation and selling expenses, discounted the future sales back to the year of the contribution. He used a 20-percent discount rate to arrive at his value of $ 87,000. From this amount, Mr. Thompson deducted the "after contribution value" of the lots, stipulated to be $ 9,500, leaving a value on petitioners' contribution of the nine lots in the amount of $ 77,500. Mr. Thompson valued the gift of the Chadwick Meadow Conservancy at zero since the "before gift" value was equal to the "after gift" value. While Mr. Thompson adequately set forth the procedures he used in reaching his value determination, we are not persuaded that his determination of fair market value is accurate. Mr. Thompson utilized an exceedingly high discount rate of 20 percent over a six-year period in which, by respondent's own admission, average interest rates fluctuated from a high of around 19 percent to a low of under nine percent. Next, Mr. Thompson utilized comparables for some of the lots that were almost half the size of the lots in question. When asked about this discrepancy during cross-examination, *76 Mr. Thompson stated he afforded no additional value to the lots in question based on their larger size. Further, we find it beyond belief that the gift of 60 acres, constituting the Chadwick Meadow Conservancy, has no value at all. Even though prior restrictions had been placed upon the 60 acres, the fee simple gift by petitioner and his wife is certainly of some value. We believe Mr. Thompson's $ 170,000 retail value appraisal of the nine lots best represents the fair market value of the lots, under their highest and best use, at the time petitioner and his wife made their charitable contribution. Petitioners contend that the comparables used by Mr. Thompson in valuing the lots at a fair market value of $ 170,000 are faulty since the comparables were substantially smaller in size than the nine lots in question. While this argument has some merit, as we have noted above, petitioners offered no expert testimony or any other evidence to support their position that the differences between the comparables used by Mr. Thompson and the nine lots in question would have any impact upon the fair market value of the nine lots. In the absence of any such expert testimony or other evidence, *77 petitioners have failed to demonstrate what amount these differences would make in Mr. Thompson's appraisal. Respondent argues that the "after contribution" value of the subject property must be subtracted from the "before contribution" value in order to reach the subject property's fair market value. The "before and after" valuation process is intended for situations where one party gives away an interest in property other than his entire interest. Therefore, in order to determine the value of the interest transferred, the value of the interest remaining after the transfer is subtracted from the value of the "whole" interest before the transfer. This valuation approach is useful in valuing easements and interests lasting for a set number of years. Since we previously found that petitioners' gift was equivalent in value to a full fee interest, the "before and after" valuation approach is not the correct method to use in determining the value of the subject property. Petitioners and respondent stipulated that the after value contribution of the Chadwick Meadow Conservancy was $ 3,000 ( $ 50 per acre). We are unpersuaded that the 60-acre Chadwick Meadow Conservancy is of no value, *78 and we find the value of the Chadwick Meadow Conservancy at the time of petitioner's contribution to be $ 3,000. In sum, we conclude, after examining all the relevant facts in this case, that the fair market value of the nine lots in question is in line with Mr. Thompson's initial appraisal of retail value, utilizing the comparative sales approach, of $ 170,000. We remain unpersuaded that subtracting amounts based on arbitrary time lines and inflated discount rates will produce a figure better reflecting the lots' fair market value. Therefore, we hold that the $ 170,000 valuation for the nine lots stands without additional adjustment. Further, we find that the value of the 60-acre Chadwick Meadow Conservancy is $ 50 an acre, or $ 3,000. Therefore, the total fair market value of the subject property making up petitioners' gift to the State of New Hampshire is $ 173,000 for purposes of determining the charitable gift deduction. We have considered the other arguments of both parties and find them wholly unpersuasive and without merit. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure and section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.↩
2. The present case is similar to a recent Memorandum Opinion of this Court. In Mathis v. Commissioner, T.C. Memo 1989-254↩, we held that the burden of proof was not placed on respondent where respondent concedes a portion of the amounts set forth in the notice of deficiency.