T.C. Memo. 2001-140

UNITED STATES TAX COURT

BRUCE A. AND KATHY J. KRIST, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22563-97.                    Filed June 15, 2001.

Bruce A. Krist, pro se.

<u>Joanne B. Minsky</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>: This case was assigned to Special Trial Judge
Pajak pursuant to section 7443A(b)(4), Internal Revenue Code in
effect when the petition was filed, and Rules 180, 181, and 183,
Tax Court Rules of Practice and Procedure.  The Court agrees with
and adopts the opinion of the Special Trial Judge, which is set
forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

PAJAK, Special Trial Judge: Respondent determined a deficiency of $5,977 in petitioners' Federal income tax for 1995 and a section 6651(a)(1) addition to tax of $219.60. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent, in an answer to the amended petition filed herein, claims an increased deficiency of $12,030 and an increased section 6651(a)(1) addition to tax of $522 for 1995. The parties have stipulated that petitioners incurred at least $2,890 in advertising and telephone expenses deductible under section 162(a) which relate to the locksmith business of Bruce Krist (petitioner).

We must decide: (1) Whether petitioners are entitled to deduct the remaining disallowed Schedule C expenses of $19,976 ($22,866 total disallowed minus $2,890) for the locksmith business; (2) whether petitioners had $19,640 of unreported income for 1995 in the form of unexplained bank deposits; (3) whether petitioners had $14,093 of additional unreported income in the form of unexplained bank deposits, an issue raised for the first time on brief; (4) whether petitioners are entitled to a casualty loss of $15,800 for the seizure and destruction of the guns held for their alleged firearms business; and (5) whether

petitioners are liable for the section 6651(a)(1) addition to tax for failure to file a timely income tax return.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Poinciana, Florida, at the time they filed their petition.

In 1995, petitioner and Kathy Krist (Mrs. Krist) resided in Hazel Crest, Illinois. They filed their 1995 Federal income tax return electronically on May 14, 1996. On April 16, 1999, they filed an amended return for 1995. The notice of deficiency was timely mailed to petitioners on August 13, 1997.

During 1995, petitioner operated BK Locksmith, a locksmith business. His brother Brett Krist (Brett) worked for the locksmith business in 1995. Petitioner also had a Federal firearms license in the name of Illinois Firearms Service, owned a rental property, operated a limousine business, and was in the process of rehabilitating a house for sale. Petitioner was engaged part-time in these activities. However, during 1995, he spent more time rehabilitating the house than he spent working in his locksmith business.

Mrs. Krist was employed full-time as a receptionist at Baker & McKenzie, a law firm, and part-time at Archibald Candy Corp., where she worked for Fannie May Candies during the Easter holiday.

Petitioners had four bank accounts: one was Mrs. Krist's personal account; one was an account for the locksmith business and firearms service (locksmith account); one was for the rehabilitation of the house and the limousine business (rehabilitation account); and one was for the rental activity (rental account). Receipts from the locksmith business and the firearms service were deposited in the locksmith account and receipts from the rental activity were deposited in the rental account.

Petitioners took out a bigger loan than was required for the purchase of the house because they needed money to restore it. They put the borrowed money in an account that belonged to petitioner's mother so that it would earn interest. His mother would apportion their borrowed money as they needed it. In 1995, they received $10,200 of their borrowed money from the mother's account and deposited it in the rehabilitation account along with deposits from the limousine business.

As part of the locksmith business, petitioner made keys for houses, businesses, and cars, and also made keys for repossessed automobiles for one of his clients. Much of petitioner's work was done in the evenings after regular business hours. BK Locksmith was located in petitioner's garage (apparently not detached) at his house in Hazel Crest, Illinois. Because one of his clients was the management company of an apartment building

located near his house, petitioner had customers who would come to his house.  The management would bring the locks over to be rekeyed whenever a tenant moved out.  If someone lost a key, petitioner would make it at his house.  Two other car dealer clients would bring automobiles by his house for him to rekey.  Much of petitioner's work was done onsite such as at a client's house where a lockout occurred or at a car dealership.  Petitioner kept some machines and equipment in his garage.  Petitioner kept records of his daily sales and of his supplies in a checkbook and in a business journal.  Petitioner did not place his business journal in evidence.  Petitioner provided his customers with invoices, but he used the type that were duplicates, and, to get more for his money, he used both parts for different jobs, essentially making 100 invoices out of what should have been 50.  Therefore, he kept no copy of the invoices.  Petitioner kept some inventory on hand, but usually bought it when needed.

Petitioner's brother, Brett, did work for the locksmith business in 1995.  However, petitioner did not file a Form 1099 reporting income he paid to his brother.  He claimed he did not know what to file, and he figured it did not matter because his brother was family.  Petitioner claimed he kept a ledger of how much Brett was paid, but the ledger was not produced.  Respondent calculated that in the check register about $3,600 was recorded

as paid to Brett. Petitioner stated that the complete records were in a spiral notebook. However, he destroyed the pages in the notebook on a weekly basis.

In the notice of deficiency respondent disallowed the following expenses claimed by petitioners on Schedule C of their 1995 Federal income tax return that pertained to the locksmith business:

| | |
|---|---|
| Advertising | $ 5,350 |
| Commissions | 12,105 |
| Telephone | 1,252 |
| Home office | 960 |
| Supplies | 1,704 |
| Car/truck | 1,495 |

OPINION

Section 162(a) allows the deduction of "ordinary and necessary" expenses paid or incurred during the taxable year in carrying on a trade or business. Whether an expenditure is ordinary and necessary is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). An ordinary and necessary expense is one which is appropriate and helpful to the taxpayer's business and which results from an activity that is a common and accepted practice in the business. Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), affd. without published opinion (9th Cir. 1983).

We find petitioner's testimony to be truthful. It is clear that petitioner operated a locksmith business in 1995. In the

operation of such a business he would have incurred expenses for advertising, telephone, supplies, car and truck, and commissions. Deductions are strictly a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must substantiate claimed deductions. Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Moreover, taxpayers must keep sufficient records to establish the amounts of the deductions. Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); Sec. 1.6001-1(a), Income Tax Regs. Generally, except as otherwise provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount, bearing heavily if it chooses against the taxpayer whose inexactitude is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The Court, however, must have some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

1. Claimed Expenses for Advertising, Telephone, Supplies, and Commissions

Petitioner's check register, for the most part, showed his expenses in a consistent manner. Thus, we are able to estimate some of the claimed expenses. In addition to the allowance of the $2,890 for the advertising and telephone expenses agreed to by the parties, we find that petitioners are entitled to deduct additional expenses of $1,856 for advertising and telephone. We

also find that they are entitled to deduct $852 as expenses for supplies.

The amount of $12,105 claimed as "commissions" paid to Brett for his work in the locksmith business is allowed only to the extent of $3,600, the amount recorded in the check register. No other evidence was provided by petitioners.

2. Claimed Car and Truck Expenses

Section 274(d) imposes stringent substantiation requirements for the deduction of travel expenses and expenses of certain listed property defined under section 280F(d)(4), such as an automobile. For such expenses taxpayers must substantiate by adequate records certain items in order to claim deductions, such as the amount and place of each separate expenditure, the property's business and total usage, the date of the expenditure or use, and the business purpose for an expenditure or use. Sec. 274(d); sec. 1.274-5T(b), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To substantiate a deduction by means of adequate records, a taxpayer must maintain an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence which, in combination, are sufficient to establish each element of expenditure or use. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). If an expense item comes within the requirements of section 274(d), this Court cannot rely on Cohan v. Commissioner, supra, to estimate the taxpayer's expenses with respect to that

item.  Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

The record does not contain any documentary evidence to support petitioner's claimed car and truck expenses.  Petitioner failed to maintain adequate records such as a diary, log book, or trip sheets to show the distances he purportedly traveled in furtherance of his locksmith business.  Therefore, in view of the strict substantiation rules of section 274(d), we hold that petitioners are not entitled to deduct car and truck expenses for 1995.

3.  Claimed Home Office Expenses

Section 280A limits the situations in which a deduction of expenses related to a home office are allowable.  There is an exception if a portion of the dwelling unit is used exclusively on a regular basis as the principal place of business for any trade or business of the taxpayer or as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business. Sec. 280A(c)(1)(A),(B).  Incidental or occasional meetings with customers are not enough to qualify the home office for this exception.  Crawford v. Commissioner, T.C. Memo. 1993-192.

In Commissioner v. Soliman, 506 U.S. 168 (1993), the Supreme Court held that when a taxpayer carries on business in more than one location the principal place of a taxpayer's business is the most important or significant place of business.  This turns on

two conditions:  (1) the relative importance of the activities performed at each business location, and (2) the time spent at each place.  Here we find that most of petitioner's locksmith work was done on the premises of customers or third parties.  The alleged home office in his garage was not petitioner's principal place of business.  Although petitioner stored certain equipment, machines, and some inventory of the locksmith business in his garage, he failed to show that the office was used exclusively for business purposes.  We are aware of the exception provided in section 280A(c)(1)(C) that if an office is a "separate structure" not attached to the dwelling unit and is used in connection with the taxpayer's trade or business, a home office deduction may be justified.  However, the statute requires that the separate structure be used exclusively for business purposes in order to qualify for the deduction.  The Senate committee report that accompanied the legislation enacting section 280A(c)(1)(C) states "with respect to a separate structure not attached to the dwelling unit, if the taxpayer uses such structure (e.g., a detached garage) for both trade or business and personal purposes, the exclusive use test is not met".  S. Rept. 94-938, at 148 (1976), 1976-3 C.B. (Vol. 3) 57, 186.

Here petitioner provided limited testimony regarding his use of the garage office.  While he introduced into evidence a hand drawn sketch of the alleged office, it is not possible to determine from the drawing whether the garage unit is a detached

garage.  But even if the garage was detached, the drawing shows that the garage was used for both personal and business purposes.

Accordingly, on the basis of the facts in the record, we sustain respondent's disallowance of the claimed home office deduction.

4.    Unreported Income Using Bank Deposits Analysis

Respondent alleged in the answer that petitioners had $19,640 of bank deposits that were unaccounted for.  On brief, respondent requested that we address whether an additional $14,093 of unexplained bank deposits, the amount of Mrs. Krist's wages, should be included in petitioners' income because of petitioner's testimony that his wife maintained her own bank account.

It is well settled that this Court will not consider issues raised for the first time on brief when to do so prevents the opposing party from presenting evidence that that party might have introduced if the issue had been timely raised.  Estate of Gillespie v. Commissioner, 75 T.C. 374, 381 (1980); Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973); Theatre Concessions, Inc. v. Commissioner, 29 T.C. 754, 760-761 (1958). Therefore, we shall not consider whether an additional $14,093 of unexplained bank deposits should be included in petitioners' income because, although petitioners knew they had to account for $19,640, they were not aware either before or during trial that respondent was asking them to account for an additional $14,093.

As to the $19,640 of unexplained bank deposits raised by the answer, respondent bears the burden of proof.  Rule 142(a).  Section 61 provides that gross income means all income from whatever source derived.  Section 6001 imposes a duty on all persons liable for any tax to maintain records.  It is well established that where a taxpayer fails to maintain adequate records, the Commissioner may prove the existence and amount of unreported income by any method that will clearly reflect the taxpayer's income.  Sec. 446(b); Harper v. Commissioner, 54 T.C. 1121, 1129 (1970); Sindik v. Commissioner, T.C. Memo. 1996-47.

In this case petitioners' return did not clearly reflect the activity in their bank accounts.  Respondent used a bank deposit analysis to determine the amount of income.  Under the bank deposit analysis, the total of all the deposits is treated as petitioners' income.  Sindik v. Commissioner, supra.  Adjustments are then made to eliminate deposits that reflect nonincome items such as gifts, loans, transfers between bank accounts, and redeposits.  Id.  Respondent determined that $65,090.01 was deposited in petitioner's three bank accounts.  Respondent alleged that petitioners accounted for $45,450 of the income on their return.  The $45,450 consists of Mrs. Krist's wages, the locksmith income, the rental income, and the limousine income.  Thus, respondent contends, a rounded amount of $19,640 remains to be accounted for.

As previously stated, petitioners had borrowed $10,200 that was deposited in an account held for them by petitioner's mother. That amount is not income to petitioners. On this record we find there were no other nonincome items to reduce the remaining $9,440. Consequently, we find that petitioners had unreported additional income of $9,440 under the bank deposits method.

We agree with respondent that this additional $9,440 is subject to self-employment tax under section 1401, and petitioners are entitled to a corresponding 50-percent deduction under section 164(f).

5. Claimed Casualty Loss

Respondent contends that petitioners are not entitled to a casualty loss of $15,800 for the seizure and destruction of the guns held for their alleged firearms business. Petitioners claimed this loss on their amended return filed on April 16, 1999. No evidence was presented regarding this issue. Accordingly, we deem petitioners to have abandoned it. Calcutt v. Commissioner, 84 T.C. 716, 721-722 (1985); German v. Commissioner, T.C. Memo. 1993-59, affd. without published opinion 46 F.3d 1141 (9th Cir. 1995). We hold that petitioners are not entitled to a casualty loss.

6. Addition to Tax for Failure To File Timely Returns

Section 6651(a)(1) imposes an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing previously granted.

The addition equals 5 percent for each month that the return is late, not to exceed 25 percent.  Sec. 6651(a)(1).  Additions to tax under sections 6651(a)(1) are imposed unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect.  Petitioners must prove both reasonable cause and a lack of willful neglect.  Crocker v. Commissioner, 92 T.C. 899, 912-913 (1989).  "Reasonable cause" requires the taxpayers to demonstrate that they exercised ordinary business care and prudence.  United States v. Boyle, 469 U.S. 241, 246 (1985).  Willful neglect is defined as a "conscious, intentional failure or reckless indifference."  United States v. Boyle, Id. at 245.

Petitioners filed their 1995 Federal income tax return electronically on May 14, 1996.  They did not testify as to why they did not file their return on time.  They failed to prove that they had reasonable cause for their late filing and that there was a lack of willful neglect.  Therefore, we hold that petitioners are liable for the section 6651(a)(1) addition to tax.

To reflect the foregoing,

Decision will be entered

under Rule 155.